**Eddie Leroy TRICE, Petitioner,**

v.

**The STATE of Oklahoma, Respondent.**

No. PC–94–1268.

Court of Criminal Appeals of Oklahoma.

Feb. 29, 1996.

351

tion of 21 O.S.1981, § 1431 (Count III), and Assault and Battery with a Dangerous Weapon in violation of 21 O.S.Supp.1982, § 645 (Count IV). Counts II through IV were charged after former conviction of two or more felonies. After finding the aggravating circumstances that Trice had previously been convicted of a violent felony, that he knowingly created a great risk of death to more than one person during the homicide, that the murder was especially heinous, atrocious or cruel and that he posed a continuing threat to society, the jury recommended and the Honorable William R. Burkett imposed a sentence of death for the murder charge.[1] In accordance with the jury's further recommendation, the judge sentenced Trice to consecutive 999 year sentences on the remaining three counts.

This Court affirmed Trice's conviction and sentence in *Trice v. State*,[2] and subsequently denied his petition for rehearing. The United States Supreme Court denied Trice's petition for writ of certiorari on December 11, 1993.[3] On August 29, 1994, Trice filed an application for post-conviction relief in Oklahoma County District Court.[4] That application was denied on November 18, 1994. Trice now appeals the district court's denial of his application for post-conviction relief.

Vicki Ruth Adams Werneke, Patrick J. Ehlers, Jr., Assistant Appellate Indigent Defenders, Norman, for Petitioner.

W.A. Drew Edmondson, Attorney General, A. Diane Blalock, Assistant Attorney General, Oklahoma City, for Respondent.

## OPINION AFFIRMING DENIAL OF PETITIONER'S APPLICATION FOR POST–CONVICTION RELIEF

CHAPEL, Vice Presiding Judge.

Eddie Leroy Trice was tried by jury in Oklahoma County District Court Case No. CRF–87–878 and convicted of First Degree Malice Aforethought Murder in violation of 21 O.S.1981, § 701.7 (Count I), First Degree Rape in violation of 21 O.S.Supp.1986, § 1114 (Count II), First Degree Burglary in viola-

## ISSUES BARRED BY RES JUDICATA

■ Trice argues in his first proposition that the trial court committed reversible error in refusing to allow testimony from a defense witness who planned to inform the jury how many years a convict serving several consecutive life sentences would actually spend in prison. He acknowledges that this very claim was raised and rejected on direct appeal,[5] but argues it is not procedurally barred as *res judicata* because it is grounded

---

1. The jury did not find the existence of an additional aggravator which the State alleged: that Trice committed the murder to avoid or prevent lawful arrest or prosecution.

2. 853 P.2d 203 (Okl.Cr.1993). This Court struck the heinous, atrocious or cruel aggravator on the basis that the trial court's instruction defining it was unconstitutionally vague. *Id.* at 221.

3. *Trice v. Oklahoma*, —— U.S. ——, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993).

4. The Post–Conviction Procedure Act, found at 22 O.S.1991, §§ 1080–89, sets forth the rules governing defendants' challenges to a conviction and/or sentence after resolution of their direct appeal. Section 1089 applies specifically to capital post-conviction appeals.

5. *See Trice*, 853 P.2d at 219.

in *Simmons v. South Carolina* [6]—a case which 1) constitutes an intervening change in constitutional law and 2) impacts his judgment and sentence.[7] We find *Simmons* inapplicable and thus hold Trice's claim procedurally barred as *res judicata.*

Shortly before his capital murder trial, the petitioner in *Simmons* pled guilty to and was convicted of several violent felony offenses. As a convicted violent felony offender, Simmons would—under South Carolina law—be rendered parole-ineligible if he were subsequently convicted of another violent felony. That subsequent conviction occurred when the jury in the first phase of Simmons's capital trial found him guilty of first degree murder. Thus, Simmons was parole-ineligible as he entered the penalty phase of his capital trial during which the jury had the option of sentencing him to life imprisonment or death.

Though fully aware that Simmons would never get out of prison if the jury opted for a life sentence rather than death, the prosecution vigorously argued during the penalty phase that Simmons posed a continuing threat to elderly women and urged the jury to consider this fact in fixing the appropriate punishment. In an effort to rebut the prosecution's future dangerousness argument, Simmons asked the trial court to explain to the jury that because he was parole-ineligible, a sentence of life imprisonment would in fact afford him no parole. The trial court refused his request and the jury ultimately returned a sentence of death.

On appeal, the United States Supreme Court reversed Simmons's conviction as violative of due process, holding that the State may not "create a false dilemma by advancing generalized arguments regarding the defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant never will be released on parole." [8] This holding was predicated on the fact that as the jury was contemplating his sentence, Simmons "was legally ineligible for parole and thus would remain in prison if afforded a life sentence." [9] That crucial fact is not present in Trice's case: Under Oklahoma law, Trice was not and could not have been parole-ineligible as he faced his sentencing jury.[10] Accordingly, the due process violation identified in *Simmons*—committed when the prosecution secured a death sentence at least in part on grounds of Simmons's future dangerousness while at the same time concealing from the jury the fact that he would be parole-ineligible if he received a life sentence—could not have occurred in this case.

Trice's reliance on *Simmons* is therefore misplaced. The holding in that case is not dispositive of Trice's claim that he should have been allowed to tell his sentencing jurors how many actual years he would spend in prison if they elected to impose consecutive life sentences rather than death.[11] Proposition one is barred as *res judicata* and will not be reconsidered on the merits.

## ISSUES TECHNICALLY WAIVED BUT ULTIMATELY PRESERVED UNDER RUBRIC OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

■ Trice argues in his second and seventh proposition that his direct appeal attor-

---

6. 512 U.S. ——, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).

7. *See Bryson v. State,* 903 P.2d 333, 334 (Okl.Cr. 1995) (an exception to procedural rules barring post-conviction collateral review exists "when an intervening change in constitutional law impacts the judgment or sentence."). *See also Rojem v. State,* 829 P.2d 683, 684 (Okl.Cr.), *cert. denied,* 506 U.S. 958, 113 S.Ct. 420, 121 L.Ed.2d 343 (1992).

8. *Simmons,* 512 U.S. at ——, 114 S.Ct. at 2198.

9. *Id.* at ——, 114 S.Ct. at 2195.

10. Unlike South Carolina, Oklahoma has no statutorily mandated prohibition on a prisoner's parole eligibility. Oklahoma inmates cannot be denied parole consideration because they have prior violent felony convictions. Unless an Oklahoma prisoner has been sentenced to life without parole, he or she is—with few exceptions—automatically eligible for parole consideration upon completion of one-third of their sentence. 57 O.S.Supp.1993, § 322.7(A).

11. We note that the life without parole option which is now part of Oklahoma's statutory capital sentencing scheme did not become effective until November 1, 1987. *See* 21 O.S.Supp.1987, § 701.10. Trice's trial was held in June of 1987. His jury was thus instructed on the only two sentencing options available at that time: life imprisonment or death.

ney was ineffective because, but for unartful presentation, some of the claims counsel raised at that juncture would have warranted relief. These claims are as follows: Trice's confessions to murder and rape should not have been admitted at trial because they were obtained in violation of his State and Federal constitutional rights; the trial court erred in refusing Trice's requested instruction on the defense of intoxication; the trial court erred in admitting prejudicial photographs; prosecutorial misconduct deprived Trice of a fair trial; and, the trial court erred in failing to instruct the jury that if it could not reach a unanimous decision, the trial court would impose a life sentence. These substantive issues are procedurally barred as *res judicata.*[12] However, because this is Trice's first opportunity to allege and argue direct appellate counsel's ineffectiveness, we will determine whether Trice's direct appeal attorney's presentation of these issues comported with the Sixth Amendment.

■ "To prevail on an ineffective assistance of counsel claim, [Trice] must show that his attorneys' performance was deficient and that such deficient performance prejudiced him."[13] Assuming Trice were able to show that his direct appeal attorney's performance was deficient, to prove prejudice he would still have to establish a reasonable probability that, but for her unprofessional errors, the result of his direct appeal would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[14]

■ In applying the *Strickland* test to a post-conviction applicant's claim that counsel

was ineffective because they unartfully argued an issue on appeal, we have concluded that "an appellate brief meets Sixth Amendment requirements if it presents relevant issues which are supported by facts and authority sufficient to enable this Court to consider them."[15] It follows that propositions included in an appellate brief are constitutionally adequate if they contain relevant legal arguments which are supported by pertinent facts and legal authority. We have reviewed all five claims which Trice argues were unartfully presented on direct appeal, and find they were adequately and thoroughly argued as well as supported by relevant facts and legal authority.

■ Post-conviction review does not afford defendants the opportunity to reassert claims in hopes that further argument alone may change the outcome in different proceedings.[16] Trice's direct appeal attorney's presentation of the issues in question was not deficient, and further argument on post-conviction would not render those issues meritorious.[17] Propositions two and seven are denied.

■ In his fifth proposition, Trice additionally claims appellate counsel was ineffective because she failed to raise ineffective assistance of trial counsel on direct appeal and she failed to raise other critical substantive issues on direct appeal. The substantive grounds underlying Trice's ineffectiveness claims are procedurally barred. However, we reiterate that because this is Trice's first chance to test appellate counsel's performance, we will examine these underlying substantive issues "insofar as [they are] dis-

---

**12.** *See Hooks v. State,* 902 P.2d 1120, 1123 (Okl. Cr.1995); *Sellers v. State,* 889 P.2d 895, 897–98 (Okl.Cr.1995); *Nguyen v. State,* 844 P.2d 176, 178 (Okl.Cr.1992), *cert. denied,* — U.S. —, 113 S.Ct. 3006, 125 L.Ed.2d 697 (1993). Trice acknowledges that all five of these claims were presented and rejected on direct appeal.

**13.** *Hooks,* 902 P.2d at 1123 (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).

**14.** *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

**15.** *Hooks,* 902 P.2d at 1124; *Mann v. State,* 856 P.2d 992, 994 (Okl.Cr.1993), *cert. denied,* —

U.S. —, 114 S.Ct. 1869, 128 L.Ed.2d 490 (1994); *Nguyen,* 844 P.2d at 178.

**16.** *Hooks,* 902 P.2d at 1124; *Fowler v. State,* 896 P.2d 566, 570 (Okl.Cr.1995).

**17.** Trice's ineffective assistance of counsel argument also fails on grounds of lack of prejudice. To meet *Strickland*s prejudice prong, Trice must show that, but for his direct appeal attorney's deficient performance, the result of his appeal would have been different. Trice presents no evidence to show and we have found no evidence to suggest that had his direct appeal attorney argued the five issues in question differently, he would have prevailed at that juncture.

positive of [Trice's] ineffective assistance of appellate counsel claim[s]." [18]

Trice first argues appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim on direct appeal. In proposition four, Trice sets forth the following ten examples of his trial attorneys' alleged ineffectiveness: (1) they allowed the case to go to trial less than four months after the crime occurred; (2) they failed to investigate, develop and present relevant mitigation evidence during the sentencing phase; (3) they failed to investigate possible defenses at both the guilt/innocence and sentencing stages, and conceded Trice's guilt; (4) they failed to challenge the rape charge; (5) they failed to present an opening statement during the guilt/innocence stage; (6) they failed to support requested jury instructions with relevant authority; (7) they failed to make adequate and proper argument; (8) they waived jury polling after guilty verdict; (9) they failed to challenge Trice's prior felony convictions and stipulated to them during sentencing. Finally, Trice claims his defense attorneys were rendered ineffective because the State failed to provide them adequate funds with which to pursue mental health issues.[19]

■ To determine whether appellate counsel was ineffective for failing to press these claims of trial counsel ineffectiveness, we must review the trial attorneys' allegedly deficient performance. If the trial attorneys' performance was in fact deficient, and such deficient performance prejudiced Trice by adversely affecting the outcome of his appeal, then appellate counsel's failure to raise these claims on direct appeal would in fact also constitute ineffective assistance under *Strickland*. In other words, to obtain relief on his ineffective assistance of appellate counsel claim, Trice must show that had they raised ineffective assistance of trial counsel on direct appeal, that claim would have "warrant[ed] reversal, modification of sentence, or remand for resentencing." [20]

■ We begin by noting that "[t]he object of an ineffective assistance claim is not to grade counsel's performance." [21] Accordingly, we "indulge a strong presumption that [Trice's trial attorneys'] conduct [fell] within the wide range of reasonable professional assistance...." [22] Further, we will assess their legal performance as of the time it was given and not with the benefit of hindsight.[23]

■ Trice claims in example number one that his trial attorneys were unprepared and should have asked for a continuance rather than proceed to trial less than four months after the crimes were committed. There is of course no hard and fast rule setting forth how much time an attorney needs to adequately prepare for a capital trial. Preparation time for this relatively uncomplicated case was probably less than in other cases in which the facts and circumstances give rise to more complex issues. For instance, Trice's confession to both charges obviated the need to investigate theories of innocence. The defense strategy on the murder charge was straightforward: Trice was under the influence of alcohol and PCP and thus could not form the specific intent to kill. After a physician examined Trice, his defense attorneys declared that they would neither present an insanity defense nor offer any psychiatric testimony during the first stage of trial. Given the uncomplicated facts of this case and the defense strategy, we fail to see how Trice's defense attorneys' failure to request a continuance and decision to proceed to trial

**18.** *Robedeaux v. State*, 908 P.2d 804, 806 (Okl.Cr. 1995).

**19.** In his brief, Trice lists the ten examples of alleged ineffectiveness, but discusses and supports only numbers one, two, four and ten. Because Trice has made no attempt to establish either deficient performance or prejudice for those examples listed in numbers three, five, six, seven, eight and nine, we find without further discussion that as to them, he has not met his burden under *Strickland*.

**20.** *Hooks*, 902 P.2d at 1124; *Mann*, 856 P.2d at 994; *Nguyen*, 844 P.2d at 179–80.

**21.** *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

**22.** *Id.* at 689, 104 S.Ct. at 2065.

**23.** *Id.* at 690, 104 S.Ct. at 2066.

fell below objective standards of reasonableness.[24]

■ In his second example of alleged ineffectiveness, Trice argues that due to his trial attorneys' lack of preparation, they were unable to adequately develop and present second stage mitigating evidence. He acknowledges that his defense attorneys presented *some* evidence in mitigation, but insists that it would have been of better quality and more persuasive had they spent more time gathering and developing it. Trice cites the following examples of information his trial attorneys failed to find and present: Trice did not misbehave while in Kansas and Oklahoma prisons; he received a certificate from a correctional facility for participating in a prisoners' Run Against Child Abuse; he was raped in a county jail when he was sixteen-years-old; and, he had led a tragic life.

Defense attorneys in this case called fourteen second stage witnesses, five of whom testified about the mental and physical abuse Trice suffered during his youth, at the hands of family and neighbors. Thus, the jury was informed that Trice had a painful upbringing. The fact that his trial attorneys did not present additional, potentially mitigating evidence concerning his prison experiences did not render their performance deficient.[25] Further, Trice has failed to show that, had the jury been informed of these additional mitigating facts, it would have concluded that those facts outweighed evidence in aggravation.[26]

■ Trice alleges in his fourth example that his trial attorneys were ineffective for failing to challenge his rape charge and for conceding his guilt. He bases this claim on the fact that the forensic evidence against him was inconclusive. In light of the fact that Trice confessed to having raped the

victim, we find that his trial attorneys' strategic decision to concede guilt was neither unreasonable nor prejudicial.

■ In his tenth example, Trice claims that the State's failure to provide adequate funds for psychiatric evaluation rendered his defense attorneys ineffective. The court authorized the $750.00 expense for Trice's expert witness, and Trice retained a physician. Trice now argues the $750.00 was insufficient to obtain the caliber of mental health expert who could *adequately* test him. Assuming a defense attorney could actually be *rendered* ineffective by State action, we find that Trice's defense attorneys' performance was well within the bounds of reasonably effective assistance. Viewing Trice's trial attorneys' conduct as of the time it occurred, we find they made professional, reasonable decisions: they applied for funds to help them determine Trice's mental condition; upon receiving the funds, they obtained a psychologist; and, after the psychologist evaluated Trice, they informed the court they would neither pursue an insanity defense nor present psychiatric testimony during the first stage of trial. These decisions did not fall below objective standards of reasonableness.

For his third theory of appellate counsel ineffectiveness, Trice next argues in proposition five that appellate counsel failed to raise critical substantive issues on direct appeal. While we are poised to review the merits of those omitted arguments insofar as they are dispositive of Trice's ineffective assistance of appellate counsel claims, we are unable to do so because Trice has failed to delineate them. Trice's ineffective assistance of counsel claims based on theories of 1) omitted meritorious issues and 2) failure to raise ineffective assistance of trial counsel claims, do not meet the *Strickland* test. Accordingly, propositions four and five are denied.

24. We have previously held that bare allegations of defense counsel's unpreparedness do not support a claim of ineffective assistance. *See Nguyen*, 844 P.2d at 179; *Lamb v. State*, 756 P.2d 1236, 1237–38 (Okl.Cr.1988).

25. In fact, we have held that a trial attorney's decision to present no evidence in mitigation does not automatically render him or her ineffective. *See Boyd v. State*, 839 P.2d 1363, 1375 (Okl.Cr.1992), *cert. denied*, — U.S. —, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993).

26. *Boyd*, 839 P.2d at 1375.

## OTHER ISSUES

In his third proposition, Trice argues that the district court erred in failing to grant his request for an evidentiary hearing on some of his post-conviction claims. Trice acknowledges that he has no constitutional right to such a hearing, but maintains that opposing arguments in his post-conviction application and the State's response created material issues of fact which the district court could not have resolved by referring to the available record.[27] We agree that the opposing briefs did create factual disputes on issues of appellate counsel effectiveness and Trice's mental health status. For the limited purposes of post-conviction review, however, those issues could have been and were in fact resolved based upon facts contained in the record. We fail to see how any additional information that might have been revealed in an evidentiary hearing would have been relevant to the district judge's analysis and conclusion.[28] Proposition three is denied.

Trice claims in proposition six that he is actually innocent and thus not deserving of either his murder conviction or his death sentence. He claims to suffer from post-traumatic stress disorder ("PTSD") and paranoid psychosis, and that the jury was never informed of these mental conditions. Had the jury with proper instruction been apprised that he is afflicted by these specific psychological problems, he argues, it would have concluded either that he could not have formed the specific intent to kill necessary for a first degree murder conviction, or that he acted in self-defense.[29] Trice further argues that had the jury been informed of his PTSD and paranoid psychosis, it would have concluded that these mitigating factors outweighed the State's evidence supporting the alleged aggravators and not sentenced him to death.[30]

Although superficially presented as claims of "actual innocence," a review of the substance of these arguments reveals that they constitute simply another attack on trial counsel's decision not to use Trice's allegedly poor mental health to argue against a murder conviction and death sentence. We reviewed those very allegations of ineffectiveness in propositions four and five, *supra*, and concluded that trial counsel's performance passed constitutional muster. Proposition six is therefore denied.

After a thorough review of Trice's post-conviction application, the record before us on appeal and the briefs of the parties, we find that Trice is not entitled to relief. We therefore **AFFIRM** the district court's order denying Trice's application for post-conviction relief.

JOHNSON, P.J., and LUMPKIN, LANE and STRUBHAR, JJ., concur.

**27.** *See* 22 O.S.1991, § 1084 ("If the application [for post-conviction relief] cannot be disposed of on the pleadings and record, or there exists a material issue of fact, the court shall conduct an evidentiary hearing at which time a record shall be made and preserved.").

**28.** *Berget v. State,* 907 P.2d 1078, 1084–85 (Okl. Cr.1995); *Moore v. State,* 889 P.2d 1253, 1257–58 (Okl.Cr.), *cert. denied,* —— U.S. ——, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995); *Johnson v. State,* 823 P.2d 370, 373–74 (Okl.Cr.1991), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1984, 118 L.Ed.2d 582 (1992).

**29.** Prior to trial, the court ordered that Trice was to receive $750.00 to employ a psychiatrist to determine whether he could pursue an insanity defense. Shortly after the chosen psychiatrist examined Trice, defense counsel filed a motion declaring that he would not raise an insanity defense and that he would not offer any psychiatric testimony during the guilt/innocence phase of trial.

**30.** Trice's attorneys called fourteen witnesses during the penalty phase of trial. Five offered mitigation testimony consisting primarily of Trice's lifelong mental and physical suffering at the hands of family and neighbors.