12 P.3d 478 (2000)
2000 OK CIV APP 98
In the Matter of K.L.C., M.M.C., and A.G., alleged deprived children.
Angela Chappell, Appellant,
v.
State of Oklahoma and K.L.C., M.M.C. and A.G., Appellees.
No. 93721.
Court of Civil Appeals of Oklahoma, Division No. 1.
August 4, 2000.
Beverly Q. Watts, Watts & Watts, Oklahoma City, Oklahoma, for Appellant.
Elizabeth Carroll Hocker, Asst. District Attorney, Kay County, Newkirk, Oklahoma, for Appellee State of Oklahoma.
W. Lee Stout, Bracken, Morris & Powell, L.L.P., Ponca City, Oklahoma, For Appellees K.L.C., M.M.C., and A.G.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 1.
*479 BUETTNER, Judge:
¶ 1 The parental rights of Angela Chappell and her common-law husband, Buddy Godfrey, in their three children were terminated by jury verdict. Chappell claims error on the ground of ineffective assistance of counsel. She also contends that the evidence was insufficient to support the verdict and that her motion for directed verdict should have been granted. We disagree and therefore affirm.
¶ 2 The parents had a history of arguing, breaking up, then reconciling. The husband had drug abuse problems.[1] Chappell disapproved of his drug use and had reported his illegal activities to law enforcement officials. Chappell's problems with the law stemmed from her shoplifting activities. At the time of trial, Chappell was in the custody of the Department of Corrections, serving time for grand larceny.
¶ 3 Chappell received disability benefits for a condition diagnosed during her high school years, temporal lobe seizures. She testified that when she was not taking her medication, the condition caused her to act spontaneously. She stated that she had not had her medication for some time.
¶ 4 The two older children were adjudicated deprived initially because of being unsupervised. The children were returned to Chappell after about two years in the custody of DHS, then picked up again due to Father's criminal activity. The third child was born after this time.
¶ 5 Chappell's treatment plan for reunification of the family stated:

*480 1. Angela needs to complete a psychological evaluation and follow the recommendations of the evaluator. The evaluation should be scheduled within 2 weeks of signing the treatment plan.
2. Angela needs to complete parenting classes successfully.
3. Angela needs to attend and complete counseling.
4. Angela needs to provide a safe home for the children.
5. Angela needs to visit with the children at least weekly at her parents home or let the worker know 24 hours previous to the visit if she wishes to take the children on a visit from the home.
6. Angela needs to provide child support to the children while they are in DHS custody.
7. Angela needs to continue working toward obtaining her GED.
8. Angela needs to stay in at least monthly contact with the worker.
Chappell received a "good" in her parenting class evaluation. She kept a clean house and kept in contact with DHS. She paid some child support. She did not receive her GED, but stated that she was scheduled to take the examination at the prison. She completed two psychological evaluations, but apparently did not sign a release on the first one. Her efforts at attending counseling were not successful.

INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 6 Oklahoma has determined that in parental rights termination cases, because the parties have a constitutional and statutory[2] right to be represented by an attorney, there attaches the concomitant "right to effective assistance of counsel." In the Matter of D.D.F., 1990 OK 89, 801 P.2d 703, 707. What has yet to be enunciated, however, is the test courts should use when determining whether there has been ineffective assistance of counsel.
¶ 7 Termination of parental rights cases, despite the high liberty interest at stake, are civil in nature. In most civil cases, there being no right to assistance of counsel, there is no right to effective assistance of counsel. Gibbs v. Gibbs, 1997 OK CIV APP 29, 941 P.2d 1014. As a result, the principal authority describing ineffective assistance of counsel is found in criminal law.[3] Although the final question the jury addresses in these proceedings is whether the termination of parental rights is in the child's best interests, nonetheless the Oklahoma Supreme Court has determined that threatened termination of parental rights "requires the full panoply of procedural safeguards must be applied to child deprivation hearings. This includes the right to counsel." In the Matter of Chad S., 1978 OK 94, 580 P.2d 983, 985.
¶ 8 Chad S. also adopted the rationale that child dependency hearings equate to criminal trials. Id. at 985. The sixth amendment to the United States Constitution and Article 2, § 20 of the Oklahoma Constitution guarantee persons accused in criminal prosecutions the right to representation.[4] In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court held that a criminal defendant's claim that representation was so deficient so as to require reversal must show (1) that the attorney's performance was deficient and (2) the deficient performance prejudiced the defense. The *481 court also stated that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689, 104 S.Ct. 2052. The Tenth Circuit Court of Appeals, in Stouffer v. Reynolds, 214 F.3d 1231 (10th Cir. 2000), reenforced the notion that the prejudice must be to the defense, not whether the result of the trial would be different. ("The question is not whether counsel's ineffectiveness must be demonstrated by showing the trial would have resulted in a defense verdict, but whether the omitted evidence `creates a reasonable doubt that did not otherwise exist.'")(citing United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). "In reviewing a claim of ineffective assistance of counsel, we look at the proceedings as a whole." State ex rel. Children, Youth and Families Department v. David F., Sr., 121 N.M. 341, 348, 911 P.2d 235, 242 (N.M.App. 1995).
¶ 9 With these guiding principles in mind, we turn to the allegations Chappell contends resulted in ineffective assistance of counsel. First, Chappell asked that her appointed lawyer withdraw from representation because she believed he was not prepared for trial. He had not spoken with her in months, and did not know of her incarceration. He did not try to contact her until one week before trial but, because of her custody in the Department of Corrections, did not get to visit with her until her release to Kay County for trial. He had spoken with her fewer than 40 minutes before trial. The trial court initially tried to re-set the case but with the number of lawyers involved, it became apparent that a new trial date would be several months away. At that time, the court denied the lawyer's motion to withdraw, blamed Chappell for not keeping in touch with her lawyer, and told Chappell she could represent herself or use her present lawyer. She chose to keep her lawyer.
¶ 10 In Trice v. State, 1996 OK CR 10, 912 P.2d 349, 354, the Oklahoma Court of Criminal Appeals noted that there is "no hard and fast rule setting forth how much time an attorney needs to adequately prepare for a capital trial. Preparation time for this relatively uncomplicated case was probably less than in other cases in which the facts and circumstances give rise to more complex issues." Trice also complained that his attorney's lack of preparation was shown in the mitigation stage and cited evidence that the lawyer did not proffer. The court stated that Trice "failed to show that, had the jury been informed of these additional mitigating facts, it would have concluded that those facts outweighed evidence in aggravation." Id. at 355.
¶ 11 Likewise, while the instant case was one of the highest importance, neither the facts nor the law were complex or difficult. Chappell's lawyer did not ask the court to sever her trial from her husband's, although Husband's attorney did make a motion to sever which the court overruled. During the pre-trial motions, the court stated that severance had earlier been waived. Even though when the alleged ineffective assistance of counsel is grounded on the fact that one lawyer is representing two people with conflicting interests, then prejudice is presumed, nonetheless, the "defendant must establish that an actual conflict of interest adversely affected the lawyer's performance." In Interest of J.P.B., 419 N.W.2d 387, 390 (Iowa 1988) (Iowa adopted the less stringent standard of "substantial possibility that a conflict of interest affected the lawyer's representation.") In the case at bar, each parent was represented by her and his own lawyer. The record reveals that each parent had the opportunity, and did in fact, present her and his own story. Speculation that Husband's activities tainted Chappell's presentation is insufficient. Actual prejudice must be demonstrated.
¶ 12 Chappell's lawyer did not object to State's introduction of the amended petition which contained hearsay from the children to social workers and did not object when Chappell was cross-examined by children's attorney about the hearsay. The hearsay statements were about bruising on both of the older children inflicted by the parents, but they were not charged with abuse.
¶ 13 The attorney did not file a witness list or interview the witnesses Chappell wished to call. The lawyer opted to use the *482 other parties' witness lists and all but one of the witnesses not on those lists appeared voluntarily and testified. Because Chappell's case in chief continued into a second day, the lawyer was able to talk with those witnesses before they testified.
¶ 14 Finally Chappell asserts that had her lawyer been minimally prepared, he would have helped develop a defense during the year preceding trial, such as trying to get her to a doctor and getting her medications. The rule is that when an attorney takes no action on behalf of his client, there is a legal presumption of prejudice, an exception to the satisfaction of both prongs of the Strickland requirement. Young v. State, 902 P.2d 1089, 1090. However, the lawyer in question did more than nothing. There is no presumption invoked here.
¶ 15 Looking at the case in total, we cannot say that the lawyer's representation was so deficient so that Chappell met her burden of proving ineffective assistance of counsel.[5]

EVIDENCE AT TRIAL
¶ 16 Chappell also argues that the court should have granted her motion for directed verdict and that this court should reverse the jury verdict because of her position that the evidence at trial did not support termination of her parental rights.
¶ 17 The appellate court gives great deference to the jury's fact-finding. As stated in Eversole v. Oklahoma Hospital Founders Association, 1991 OK 80, 818 P.2d 456, 459:
"A jury verdict and judgment will not be reversed for error, if there is substantial evidence to support the verdict on any theory of law. Winslow v. Watts, 1968 OK 156, 446 P.2d 598, 599 (Okla.1968). The verdict of a jury is conclusive as to all disputed facts and all conflicting statements. Walker v. St. Louis-San Francisco Ry. Co., 646 P.2d 593, 597 (Okla.1982). And, where there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the verdict and judgment based thereon." Walker, 646 P.2d at 597.
¶ 18 We have read the record, including the jury instructions. There was sufficient evidence presented by the parties to support the verdict. The jury was instructed correctly so we find no legal error corrupting the verdict. The court did not err in denying Chappell's motion for directed verdict.
¶ 19 The order of the trial court entered upon jury verdict is AFFIRMED.
¶ 20 CARL B. JONES, P.J., and GARRETT, J., concur.
NOTES
[1] Although husband is not a party to this appeal, certain of the facts concerning his circumstances are relevant to the facts in the appeal at hand. At the time of trial, he was a resident of the Kay County jail.
[2] Oklahoma authorizes the right to representation pursuant to the due process clause of our constitution, Art. 2, § 7, and legislatively pursuant to 10 O.S. Supp.1995 7003-3.7(A).
[3] Most jurisdictions have adopted the criminal test for determining whether there was ineffective assistance of counsel. Some jurisdictions however, use a civil standard. "Procedural fairness is provided for in civil due process. Notice, open testimony, time to prepare and respond to charges, and a meaningful hearing before a competent tribunal in an orderly proceeding are all elements of civil due process. Under this test, if it appears from the record that an attorney was not effective in providing a meaningful hearing, due process guaranties have not been met." In re Dependency of Moseley, a Minor, 34 Wash.App. 179, 660 P.2d 315, 318 (1983).
[4] U.S. CONST. amend. VI: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."

OKLA. CONST. art.2, § 20: "In all criminal prosecutions the accused ... shall have the right to be heard by himself and counsel; . . . ."
[5] The claim of ineffective assistance of counsel is properly raised on appeal. Whether the issue is waived if a motion for new trial is filed but without raising the question of ineffective assistance of counsel in the motion, we need not decide.