2001 OK CR 24

**Sterling Bernard WILLIAMS, Petitioner,**

v.

**STATE of Oklahoma, Respondent.**

**No. PCD–2000–1650.**

Court of Criminal Appeals of Oklahoma.

Sept. 4, 2001.

Attorneys on Appeal Bryan Lester Dupler, Laura M. Arledge, Appellate Defense Counsel, Capital Post Conviction Division, Oklahoma Indigent Defense System, Norman, OK, Attorneys for Petitioner.

W.A. Drew Edmondson, Attorney General, Jennifer B. Miller, Assistant Attorney General, Oklahoma City, OK, Attorneys for the State.

### OPINION DENYING APPLICATION FOR POST–CONVICTION RELIEF AND EVIDENTIARY HEARING

LUMPKIN, Presiding Judge:

¶1 Petitioner Sterling Bernard Williams was convicted of First Degree Murder (Count I) (21 O.S.1991, § 701.7) and Assault and Battery with Intent to Kill, After Former Conviction of Two Felonies (Count II) (21 O.S.Supp.1992, § 652), Case No. CF–97–2385, in the District Court of Tulsa County. In Count I, the jury found the existence of four (4) aggravating circumstances and recommended the punishment of death. In Count II, the jury recommended as punishment ninety-nine (99) years imprisonment. The trial court sentenced accordingly. This Court affirmed the judgments and sentences in *Williams v. State*, 2001 OK CR 9, 22 P.3d 702. Petitioner filed his Original Application for Post–Conviction Relief in this Court on April 6, 2001, in accordance with 22 O.S.Supp.1995, § 1089.

¶2 Before considering Petitioner's claims, we must again consider the narrow scope of review available under the amended Post–Conviction Procedure Act. As we have said numerous times,

> the Post–Conviction Procedure Act was neither designed nor intended to provide applicants another direct appeal. *Walker v. State*, 933 P.2d 327, 330 (Okl.Cr.1997) (interpreting Act as amended); *Fox v. State*, 880 P.2d 383, 384 (Okl.Cr.1994), *cert. denied*, 514 U.S. 1005, 115 S.Ct. 1318, 131 L.Ed.2d 199 (1995) (same conclusion under Act before amendments). The Act has always provided petitioners with very limited grounds upon which to base a collateral attack on their judgments. Accordingly, claims which could have been raised in previous appeals but were not are generally waived; and claims raised on direct appeal are *res judicata*. *Thomas v. State*, 888 P.2d 522, 525 (Okl.Cr.1994), *cert. denied*, 516 U.S. 840, 116 S.Ct. 123, 133 L.Ed.2d 73 (1995); *Castro v. State*, 814 P.2d 158, 159 (Okl.Cr.1991), *cert. denied*, 502 U.S. 1063, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992).

*Conover v. State*, 942 P.2d 229, 230 (Okl.Cr. 1997). These procedural bars still apply under the amended Act. We have noted the new Act makes it even more difficult for capital post-conviction applicants to avoid procedural bars. *Walker*, 933 P.2d 327, 331 (Okl.Cr. 1997). Under 22 O.S.Supp.1995, § 1089(C)(1), the only claims which will be considered on post-conviction are those which "[w]ere not and could not have been raised" on direct appeal and which "support a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." A capital post-conviction claim could not have been raised on direct appeal if: (1) it is an ineffective assistance of trial or appellate counsel claim which meets the statute's definition of ineffective counsel; or (2) the legal basis of the claim was not recognized or could not have been reasonably formulated from a decision of the United States Su-

preme Court, a federal appellate court or an appellate court of this State, or is a new rule of constitutional law given retroactive effect by the Supreme Court or an appellate court of this State. 22 O.S.Supp.1995, §§ 1089(D)(4)(b), 1089(D)(9). Should a Petitioner meet this burden, this Court shall consider the claim only if it "[s]upports a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." 22 O.S.Supp.1995, § 1089(C)(2). As we said in *Walker,*

> The amendments to the capital post-conviction review statute reflect the legislature's intent to honor and preserve the legal principle of finality of judgment, and we will narrowly construe these amendments to effectuate that intent. Given the newly refined and limited review afforded capital post-conviction applicants, we must also emphasize the importance of direct appeal as the mechanism for raising all potentially meritorious claims. Because the direct appeal provides appellants their only opportunity to have this Court fully review *all* claims of error which might arguably warrant relief, we urge them to raise all such claims at that juncture.

*Walker,* 933 P.2d at 331 (footnote omitted, emphasis in original). We now turn to Petitioner's claims.

▮ ¶ 3 In Proposition I, Petitioner claims appellate counsel was ineffective for failing to challenge Oklahoma Uniform Jury Instruction–Criminal (OUJI–CR) (2d) 4–68 concerning the sentencing options for first degree murder.[1] Petitioner asserts trial counsel objected to the instruction given to the jury on grounds the instruction failed to provide an adequate definition of the meaning of life without the possibility of parole. Petitioner argues that appellate counsel's failure to

raise this issue on direct appeal denied him the effective assistance of counsel under prevailing professional norms. In order to assist in the resolution of this issue, this Court ordered a response from the Attorney General. Having timely received the response, we now consider Petitioner's claim.

[2, 3] ¶ 4 In *Walker,* this Court set forth a three-prong test to review claims of ineffective assistance of appellate counsel.[2] Under this analysis, 1) the threshold inquiry is whether appellate counsel actually committed the act which gave rise to the ineffective assistance allegation. If a petitioner establishes appellate counsel actually did the thing supporting the allegation of ineffectiveness, this Court then 2) determines whether the performance was deficient under the first of the two-pronged test in *Strickland v. Washington,* 466 U.S. 668, 677–78, 104 S.Ct. 2052, 2059, 80 L.Ed.2d 674 (1984). If this burden is met, 3) this Court then considers the mishandled substantive claim, asking whether the deficient performance supports a conclusion "either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." *Walker,* 933 P.2d at 333 n. 25 (quoting 22 O.S.Supp.1995, § 1089(C)(2)).

¶ 5 Here, the threshold question is met as appellate counsel did not challenge OUJI–CR (2d) 4–68 on direct appeal. We therefore turn to the second requirement under the new Act: whether such performance was deficient under the first prong of the *Strickland* test. Under this standard the analysis is whether counsel's performance was deficient under prevailing professional norms. *Turrentine v. State,* 965 P.2d 985, 990 (Okl. Cr.1998).

---

1. OUJI–CR (2d) 4–68 provides:

   The defendant in this case has been found guilty by you, the jury, of the offense of murder in the first degree. It is now your duty to determine the penalty to be imposed for this offense.

   Under the law of the State of Oklahoma, every person found guilty of murder in the first degree shall be punished by death, or imprisonment for life without the possibility of parole, or imprisonment for life with the possibility of parole.

2. I continue to maintain that the *Strickland* test in its entirety, i.e., both prongs of the test, is the appropriate vehicle with which to review claims of ineffective assistance of appellate counsel. *See Walker,* 933 P.2d at 341 (Lumpkin, J., Concurring in Result). However, I yield to the majority here based on *stare decisis.* Having reviewed Petitioner's application, together with the argument and authority provided, in accordance with the criteria set forth in *Braun v. State,* 937 P.2d 505, 511–14 (Okl.Cr.1997), I find counsel's performance was not deficient and the underlying substantive claim is procedurally barred.

¶ 6 This Court has repeatedly upheld the uniform instruction setting forth the punishment of life without parole is sufficiently clear to enable any rational juror to understand it without explaining it further. *Malicoat v. State,* 992 P.2d 383, 400 (Okl.Cr.2000); *Hain v. State* 919 P.2d 1130, 1145 (Okl.Cr.), *cert. denied,* 519 U.S. 1031, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996); *McCracken v. State,* 887 P.2d 323, 334 (Okl.Cr.1994), *cert. denied,* 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995). Further, this Court has held that instructions additional to the uniform instruction are not necessary. *See Mayes v. State,* 887 P.2d 1288, 1318 (Okl.Cr.1994), *cert. denied,* 513 U.S. 1194, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995) ("[T]here is no requirement for a trial judge to explain the Oklahoma parole process to a jury.") *See also Douglas v. State,* 951 P.2d 651, 678 (Okl.Cr. 1997), *cert. denied,* 525 U.S. 884, 119 S.Ct. 195, 142 L.Ed.2d 159 (1998); *Mollett v. State,* 939 P.2d 1, 11 (Okl.Cr.1997), *cert. denied,* 522 U.S. 1079, 118 S.Ct. 859, 139 L.Ed.2d 758 (1998); *McGregor v. State,* 885 P.2d 1366, 1383 (Okl.Cr.1994), *cert. denied,* 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995). Therefore, as this Court has consistently rejected challenges to OUJI–CR (2d) 4–68, we find appellate counsel was not deficient for failing to raise the issue on appeal. *See Hooks v. State,* 902 P.2d 1120, 1124 (Okl.Cr.1995) ("[T]o meet both the deficient performance and prejudice prongs of the *Strickland v. Washington* test, [petitioner] must establish that his appellate attorneys failed to raise issues warranting reversal, modification of sentence, or remand for resentencing.")

¶ 7 Further, appellate counsel was not deficient for failing to raise the issue in light of recent jurisprudence from the United States Supreme Court and the Tenth Circuit Court of Appeals. Petitioner asserts that in *Shafer v. South Carolina,* 532 U.S. 36, 121 S.Ct. 1263, 149 L.Ed.2d 178 (2001) the Supreme Court reaffirmed the principle of *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), that due process entitles a defendant to inform the jury of his parole eligibility where the defendant's future dangerousness is at issue and the only sentencing alternative to death available to the jury is life without the possibility of parole.

¶ 8 In *Simmons,* the jury was given two sentencing options-life imprisonment and death. Under South Carolina state law, the defendant's prior convictions rendered him ineligible for parole. The trial court refused the defendant's requested instructions defining a life sentence and setting forth his parole ineligibility. On appeal, the Supreme Court found in the absence of an instruction setting forth the defendant's parole ineligibility, the jury could have reasonably believed the defendant would be released on parole if he were not executed. The Court explained to the extent that misunderstanding pervaded the jury's deliberations, it had the effect of creating a false choice between sentencing the defendant to death and sentencing him to a limited period of incarceration. The Supreme Court found the failure to provide the jury with accurate information regarding the defendant's parole ineligibility, combined with the state's argument the defendant would pose a future danger if not executed denied the defendant due process.

¶ 9 In *Shafer,* the jury was instructed that "life imprisonment means until death of the offender", but the trial court, over defense objection, did not instruct "that a life sentence, if recommended by the jury, would be without parole." *Shafer,* 121 S.Ct. at 1269 (internal citations omitted). Thereafter, the jury sent a note inquiring " '1) Is there any remote chance for someone convicted of murder to become elig[i]ble for parole?' " and " '2) Under what conditions would someone convicted of murder be elig[i]ble?' " *Id.* at 1269. The trial court responded with " 'Parole eligibility or ineligibility is not for your consideration.' " *Id.* The Supreme Court extended *Simmons* to situations where the jury's choice is between life without parole and death, even if a third alternative sentence encompassing release is available to the court should the jury not unanimously agree on a statutory aggravator. The Court held "whenever future dangerousness is at issue in a capital sentencing proceeding under South Carolina's new scheme, due process requires that the jury be informed that the life sentence carries no possibility of parole." *Id.* The Court recognized that the jury was confused by the absence of such instruction as evidenced by its further ques-

tion about parole eligibility, and firmly rejected the trial court's response that parole eligibility was not for the jury's consideration. The Court stated the "reality [of a life sentence without parole] was not conveyed to Shafer's jury by the court's instructions." *Id.* at 1274.

¶ 10 This Court has consistently rejected the applicability of *Simmons* to our statutory capital sentencing procedures "since Oklahoma capital juries are aware that a defendant may be sentenced to life, life without the possibility of parole, or death." *Fitzgerald v. State,* 972 P.2d 1157, 1171 (Okl.Cr. 1998). *See also Gilbert v. State,* 955 P.2d 727, 731 (Okl.Cr.1998); *Hain v. State,* 919 P.2d 1130, 1145 (Okl.Cr.), *cert. denied,* 519 U.S. 1031, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996); *Trice v. State,* 912 P.2d 349, 351–352 (Okl.Cr.1996); *Mayes v. State,* 887 P.2d 1288, 1317–1318 (Okl.Cr.1994), *cert. denied,* 513 U.S. 1194, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995).

¶ 11 *Shafer* modifies this holding only to the extent that instructions by the trial court, additional to the uniform instruction, could conflict with the uniform instruction and confuse the jury as to the meaning of the available sentencing options. In *Johnson v. Gibson,* 254 F.3d 1155 (10th Cir.2001) the trial court instructed the jury on the three statutory sentencing options, including life imprisonment without the possibility of parole. The jury sent the following note to the trial judge during deliberations: "We need to know! Is life without parole firm-Does it mean he can never be paroled?" *Id* at 1164. The trial court responded, over defense objection: "It is inappropriate for you to consider the question asked." *Id.*

¶ 12 The Tenth Circuit recognized it had previously held that instructing the jury on the three statutorily proscribed punishment options, without any further explanation, satisfies *Simmons. Id.* at 1165. The Court further noted that a trial court, in response to a jury's inquiry as to the meaning of a life sentence without parole, may simply refer the jury back to the instructions as given. *Id.* However, "instead of simply referring the jury back to the court's original instructions, 'the trial court told the jury it was not appropriate for it to consider whether the defendant could never be paroled' " and in so

doing "plainly contradicted" the original instructions. *Id.* Applying *Shafer,* the Tenth Circuit found that as a result, "the jury had a conflict between the court's instructions as to whether it was proper to consider parole eligibility in imposing sentence" and "[a]t worst, the jury may very well have thought that parole was available, even with the life without parole option, but for some unknown reason it could not consider that fact." *Id.*

¶ 13 In the present case, no instructions additional to the uniform instructions on the statutorily prescribed punishment options were given. Therefore, the jury was not presented with a "false choice" as to its sentencing options. *See Johnson v. Gibson,* 254 F.3d at 1167, (Henry, J., concurring). The record in this case reflects no questions were asked by the jury as to the meaning of any of the punishment options. Therefore, appellate counsel's failure to raise a claim of error as to the trial court's failure to give instructions additional to the uniform instructions on the three statutorily proscribed punishment options did not render his performance unreasonable under prevailing professional norms as such a claim would have been rejected in light of case law from this Court, the Tenth Circuit Court of Appeals and the United States Supreme Court. Appellate counsel's failure to raise the claim at issue here did not render his performance unreasonable under prevailing professional norms. Accordingly, post-conviction relief on the grounds of ineffective assistance of appellate counsel is denied.

¶ 14 In Proposition II, Petitioner challenges the effectiveness of both trial and appellate counsel for failing to adequately present mitigating evidence of his family history of alcoholism, bipolar disorder, and abuse. Petitioner admits that trial counsel did not wholly fail to present mitigating evidence. Petitioner acknowledges the trial testimony of his brother, Kevin Williams, concerning the family history of abuse, and the testimony of psychiatrist Dr. William Peterson concerning his diagnosis of bipolar disorder and significant mental illness. However, Petitioner argues this presentation of evidence was incomplete and susceptible to the prosecutor's claims that the mitigating evi-

dence was exaggerated. Petitioner argues there were other witnesses available to testify, namely his parents, grandmother and aunt, who if they had been called to testify would have added to the account of family violence.

¶ 15 The record reflects that on direct appeal, appellate counsel raised the issue of trial counsel's ineffectiveness for failing to present additional mitigating evidence. Appellate counsel argued trial counsel was ineffective for failing to call Petitioner's father as a witness and failing to offer any reports documenting the illnesses of Petitioner's siblings or instances of child abuse. Appellate counsel also argued in part that without such evidence, he was unable to rebut the prosecution's closing arguments that the mitigation evidence was exaggerated.

¶ 16 The claim raised on post-conviction is essentially the same claim raised on direct appeal. Therefore, as the claim of ineffective assistance of trial counsel for failing to present additional mitigating evidence was raised and addressed on direct appeal, further consideration of the merits of the issue is barred by *res judicata.* 22 O.S.Supp.1995, § 1089(C)(1). Additionally, as the claim was raised on direct appeal, the *Walker* threshold inquiry into the ineffective assistance of appellate counsel analysis has not been met, and further consideration of appellate counsel's performance is barred.

¶ 17 We consider Propositions III and IV together. In Proposition III, Petitioner argues his death sentence must be vacated because the overwhelming systemic risk of error in the Oklahoma trial and appellate process renders the death penalty a cruel and unusual punishment administered without due process and equal protection of the law. In support of his argument that the trial and appellate process in Oklahoma capital cases is insufficient to ensure consistent protection of basic statutory and constitutional rights in an even-handed and non-arbitrary fashion, Petitioner cites to a study by Professor James Liebman[3], a survey conducted by the Oklahoma Indigent Defense System and cases from this Court. Petitioner further asserts that appellate counsel's failure to raise this argument on direct ap-

peal denied him the effective assistance of counsel.

¶ 18 In Proposition IV, Petitioner argues the statistical probability that his race and the race of his victim influenced the jury's decision to impose the death penalty denied him equal protection, and constitutes an impermissible, arbitrary sentencing factor which renders his death sentence cruel and unusual punishment. He asserts that no death sentence should be enforced in this State until such time as the State shall demonstrate by at least clear and convincing evidence that the race of the defendant and/or victim plays no statistically significant role as an arbitrary factor in the capital sentencing process. Petitioner further asserts the failure of trial and appellate counsel to raise the issue in prior proceedings denied him the effective assistance of counsel.

¶ 19 Neither of the claims raised in Proposition III or Proposition IV were raised on direct appeal. As they could have been raised, but were not, further consideration is therefore waived. Applying the three-part test for ineffective assistance of appellate counsel, we find Petitioner pleads neither facts nor law showing counsel's failure to raise the issues constituted deficient performance. Propositions III and IV are denied.

¶ 20 In Proposition V, Petitioner asserts that Oklahoma's elected judiciary is not adequately shielded from the pressures of public opinion to ensure independent and impartiality of judgment, therefore his death sentence constitutes cruel and unusual punishment. He argues that because the State of Oklahoma has failed to incorporate institutional safeguards (such as life tenure) to protect its judiciary from the influences of public opinion in order to ensure the judiciary's impartiality, the process for reviewing and ensuring the fairness of individual death sentences is not worthy of confidence and violates the state and federal constitutional guarantees of due process and equal protection of the law. We find Petitioner's argument is better directed towards the State Legislature and does not warrant post-con-

---

**3.** *A Broken System: Error Rates in Capital Cases,* *1973–1995* by Professor James Liebman.

viction relief from this Court. This proposition is denied.

■ ¶ 21 In Proposition VI, Petitioner claims appellate counsel's failure to challenge the current clemency scheme denied him the effective assistance of counsel. He maintains minimum due process guarantees apply to State clemency proceedings, but claims the present Governor of Oklahoma has clearly indicated clemency will be arbitrarily denied to any condemned prisoner as long as he is in office. Petitioner thus claims his future clemency proceedings will be nothing more than a "meaningless ritual" because his fate has already been prejudged. Petitioner asserts that as the current Governor's actions and statements preclude any meaningful opportunity for clemency, this Court should either (1) stay execution of the judgment and sentence until Petitioner can present his clemency request to an impartial decision-maker other than the current Governor; (2) issue the writ of mandamus directing the Governor to observe minimal standards of procedural due process in the exercise of his official discretion to grant or deny clemency; or (3) vacate the death sentence and modify the judgment to life imprisonment.

¶ 22 While Petitioner's appellate counsel did not raise this claim on direct appeal, we cannot say appellate counsel's performance was deficient in this regard. Petitioner's allegations against the Governor derive from a newspaper article which supposedly appeared in the Daily Oklahoman in 1996. The article is not included in the Appendix of Exhibits. Therefore, as Petitioner's underlying argument is not sufficiently supported by evidence presented in his appendices, we cannot say the performance by Petitioner's appellate counsel was deficient under prevailing professional norms for failing to raise this issue. Moreover, the issue was premature during Petitioner's direct appeal as clemency proceedings had yet to commence. *See Martinez v. State,* 992 P.2d 426, 432 (Okl.Cr.1999), *cert. denied,* 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000). This proposition is denied, and we decline Petitioner's request to stay execution of the judgment and sentence, issue a writ of mandamus, or vacate the death sentence and modify the judgment to life imprisonment.

¶ 23 In his seventh and final proposition of error, Petitioner asserts that judicial adversarialism in capital post-conviction proceedings so undermines the proper functioning of the adversary process that the post-conviction procedure as applied by the Court denied due process of law and constitutes an inadequate state procedural bar to his federal constitutional claims. Petitioner incorporates arguments raised in his accompanying *Motion to Compel the State of Oklahoma to Appear and Defend and Remove this Court from Any Adversarial Role in the Adjudication of this Capital Post–Conviction Proceedings.* Petitioner contends Rule 9.7, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2000) and "prevailing custom exempting the State from its adversarial role in these proceedings" undermines the proper functioning of the adversary process and renders the post-conviction proceedings in death penalty cases fundamentally unfair and violative of the state and federal constitutional guarantees of due process of law. Petitioner also contends the application of Rule 9.7, which allows this Court to determine when the State should file an answer brief in a capital post-conviction proceeding, places this Court in the role of a judicial adversary rather than a detached neutral party. As a result, Petitioner argues, this Court's "practices and customs ... have spawned an adversarial form of judicial participation which offends principles of justice."

¶ 24 Under Rule 9.7, this Court "may direct" the State of Oklahoma to respond to Petitioner's claims if it deems such a response "necessary to the resolution of the issues raised in the petitioner's application and brief." In making such a determination, each case is reviewed individually. Here, such necessity was found and a response was ordered from the State. Therefore, Petitioner's anticipation that this Court will rule adversely to him and his conclusion that the Court will act as an adversary rather than as an unbiased examiner is premature.

¶ 25 At this time we find it is appropriate to remind post-conviction counsel of Rule 3.7, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2000). Rule 3.7 provides:

No instrument filed in this Court shall contain language showing disrespect for or contempt of the trial court or this Court. Improper, insulting or contemptuous language, pleadings or conduct of attorneys to or concerning each other in court, or to and concerning this Court, or any member thereof, or the trial court shall constitute contempt.

¶ 26 In the post-conviction application and accompanying filings in the present case, as well as in other recent capital direct appeals and post-conviction filings, counsel has come very close to making contemptuous statements. The rulings of this Court may be challenged in a professional manner without resort to disrespectful, impertinent language. However, many arguments made by counsel demonstrate a lack of respect for this Court and its decisions. Counsel's continued use of irreverent, impudent, and disrespectful language will result in notification to the Oklahoma Bar Association pursuant to Rule 3.6(C), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2000).

¶ 27 Further, we decline Petitioner's request to rewrite our Rules governing capital post-conviction procedure. We consistently have rejected claims attacking Oklahoma's capital post-conviction procedure as unconstitutional and will continue to narrowly construe the scope of review available under the Capital Post–Conviction Procedure Act. *See e.g. Martinez,* 992 P.2d at 432; *Le v. State,* 953 P.2d 52, 54–55 (Okl.Cr.), *cert. denied,* 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998); *Walker,* 933 P.2d at 330–331. Accordingly, this proposition is denied.

■ ¶ 28 Filed with Petitioner's Post–Conviction Application is a *Verified Motion for Evidentiary Hearing on Post–Conviction Claims.*[4] Petitioner asserts that he has presented sufficient evidence of controverted, previously unresolved factual issues bearing on the legality of his confinement and/or sentence to require an evidentiary hearing. Among the supporting affidavits provided by Petitioner are affidavits from trial counsel. Petitioner asserts an evidentiary hearing is critical to the full and fair adjudication of factual issues raised by the affidavits due to this Court's prior statements that such affidavits ordinarily carry little or no probative weight in its determination of the issues of ineffective assistance of counsel. Petitioner contends this Court has ignored the affidavits of criminal defense attorneys concerning critical factual issues and made findings directly contrary to the uncontradicted sworn testimony of the defense attorneys, without the benefit of any adversarial hearing. Petitioner argues that fairness dictates a full adversarial hearing, with the opportunity to present all witnesses and have their testimony cross-examined, before this Court proceeds to adjudicate any factual or legal issues based on the testimony of trial counsel.

¶ 29 The requirements for evidentiary hearings in post-conviction proceedings are set forth in Rule 9.7(D)(5), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2000):

A request for an evidentiary hearing is commenced by filing an application for an evidentiary hearing, together with affidavits setting out those items alleged to be necessary for disposition of the issue petitioner is advancing. The application for hearing and affidavits submitted by the petitioner shall be cross-referenced to support the statement of specific facts required in the application for post-conviction relief. *See* Section 1089(C)(2) of Title 22. The application for an evidentiary hearing shall be filed together with the application for post-conviction relief. *See* Section 1089(D)(2) of Title 22. **The application for hearing and affidavits must contain sufficient information to show this Court by clear and convincing evidence the materials sought to be introduced have or are likely to have support in law and fact to be relevant to an allegation raised in the application for post-conviction relief.** (emphasis added).

¶ 30 Here, Petitioner has not set forth sufficient information to show this Court by clear and convincing evidence the materials contained in the *Verified Motion* have or are likely to have support in law and fact to be

---

4. Petitioner also filed a *Motion for Appropriate Standard of Federal Judicial Review in this Capital Post–Conviction Proceeding.* This motion is **DENIED.**

relevant to adjudication of the allegations raised in the application for post-conviction relief. He merely presents allegations which are nothing more than unsupported conclusions. At this stage of the appellate process, Petitioner has the responsibility to present facts, not speculation warranting the supplementation of the record on appeal. This he has failed to do. Therefore, his motion for an evidentiary hearing is denied.

## DECISION

¶ 31 After carefully reviewing Petitioner's Application for post-conviction relief, we conclude (1) there exists no controverted, previously unresolved factual issues material to the legality of Petitioner's confinement; (2) Petitioner could have previously raised collaterally asserted grounds for review; (3) grounds for review which are properly presented have no merit; and (4) the current post-conviction statutes warrant no relief. 22 O.S.Supp.1995, § 1089(D)(4)(a)(1), (2) & (3). Accordingly, Petitioner's Application for Post–Conviction Relief is **DENIED**. Additionally, the Motion for Correction of Order Denying Motion to Reconsider Order Denying Motion for Leave of Court to Conduct Pre Filing Factual Discovery with Subpoena Power for Documents and Testimony is **DENIED**.

JOHNSON, V.P.J., specially concur.

CHAPEL, J., concur in results.

LILE, J. and WINCHESTER, J., concur.

JOHNSON, Vice Presiding Judge:
Specially Concurs.

¶ 1 While I agree with the majority's holding and reasoning, I write separately to emphasize why I believe that an ineffective assistance of counsel claim could not arise from failing to ask for the clarifying instruction advocated by Appellant. Requesting an instruction with a "meaningful definition of life without possibility of parole" (Appellant's Brief at 12) serves only to place an inordinate amount of emphasis on the fact that certain parole matters are outside the province of the jury. The "clarification" only highlights to the jury the fact that regardless of their intent to confine the defendant to prison for life, their decision can be overturned by executive measures. *See* 57 O.S. § 332. It is my opinion that this "clarification" could make the jury feel more compelled to sentence the defendant to death.

¶ 2 This Court has consistently held that the uniform instruction setting forth the punishment of life without parole is sufficiently clear and requires no explanation. *See Malicoat v. State,* 2000 OK CR 1, ¶ 28, 992 P.2d 383, 400 and cases cited therein. I can conceive of no situation in which failing to request an instruction that could serve to injure the defendant could be considered unsound trial strategy and serve as the basis for an ineffective assistance claim.