**Alfred Lee WALL, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–170.**

Court of Criminal Appeals of Oklahoma.

June 24, 1988.

Rehearing Denied Nov. 10, 1988.

Pete Gelvin, Asst. Public Defender, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Sandra D. Howard, Legal Intern, Oklahoma City, for appellee.

BRETT, Presiding Judge:

The appellant, Alfred Lee Wall, was tried by jury in Oklahoma County District Court, Case No. CRF–83–6278, and convicted of Concealing Stolen Property, After Former Conviction of Two or More Felonies (21 O.S. 1981, §§ 1713, 51) before the Honorable Jimmy N. Coffman, Special District Judge. The jury set punishment at ninety-nine (99) years imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict. We reverse.

We stress that appellant was here charged with concealing stolen property—property taken during an earlier rape and burglary for which appellant was tried and convicted in Cleveland County. Those convictions are not before us on this appeal.

We stress the crime for which he was on trial here not only because evidence presented during the State's case-in-chief was improperly presented under the requirements of *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979), but also because it graphically illustrates an example of evidence whose prejudicial effect substantially outweighs its probative value.

The elements of concealing stolen property are: (1) concealing or withholding; (2) stolen personal property; (3) that the defendant reasonably should have known or believed to have been stolen; (4) from the owner; (5) with the intent to deprive permanently. 21 O.S. 1981, § 1713; *see also* OUJI–CR 599.5. In attempting to prove the elements of the crime, Assistant District Attorney Lou Keel exposed the jury to the following:

Q. You say this man was standing over you, ... Would you describe—tell the jury how it was that he was situated.
A. He had one leg over me—
[objection on grounds of relevance overruled]
He was standing—he had one foot over me and one foot on the floor.
Q. Okay. And you were laying [sic] on the bed at this time?
Yes, sir.
. . . .
Q. And what, if anything, did he have in his hand at this time?
A. He had a knife.
Q. And where was that knife positioned?
A. At my throat?
Q. What did he have to say to you after he did that?
A. If I didn't do everything he asked, he would kill me.
. . . .
Q. Okay. What happened next?
A. He removed my T shirt from my body. He tried to tie it on my face, and I threw it off. He removed my panties and turned me over on the bed and tried to—used his hands on me. [in response to a clarifying question] He put his hands in my vagina.

Tr. 44–45. The victim then told the intruder about some jewelry she had, hoping he would leave her and take the jewelry, enabling her to escape. She acknowledged that the ploy was unsuccessful, then the following exchange took place:

Q. What happened?

A. He threw me back down on the bed and raped me.

Q. When he say that he raped you, ... what is it that you mean?

A. He put his penis—

MS. BAUMANN: Objection, Your Honor—

A. —in my vagina.

MS. BAUMANN: —everybody knows that the word 'rape' means. We're not here for a rape trial. We're here for a concealing stolen property case.

THE COURT: Sustained.

Q. (By Mr. Keel). Approximately how long a period of time did this rape take?

A. He was there—

[An objection as irrelevant was eventually sustained. The State was ordered to ask the question another way]

Q. And when I say very close distance, how far away would he be from you during this time?

A. On top of me.

Q. Now, do you know where the knife was during this period of time when he was on top of you?

MS. BAUMANN: Again, Your Honor—

MR. KEEL: I'll withdraw the question, Your Honor.

MS. BAUMANN: If we want to try the rape case again, I think I need to be appointed to represent this man on a rape case not concealing stolen property.

MR. KEEL: I'll withdraw the question, Your Honor.

Tr. 47–48. In response to further questioning, the jury learned that the intruder tied the victim with belts, covered her with blankets, gathered her jewelry and ransacked the house. It also learned that the victim positively identified appellant as the intruder at an earlier trial in Cleveland County by having him repeat the threat that he was going to kill her. Only at the end of this long exchange did the trial court give the jury the required cautionary instruction. *Burks*, 594 P.2d at 775.

The State's next witness, the victim's neighbor, testified that the victim came to her house, hysterically saying she had been raped. She testified as to the physical condition of the victim, saying that her neck showed where a knife had been placed against the skin. She also testified that the house had been ransacked.

■ Even assuming for the moment that some scant portion of the victim's testimony was relevant to show intent or that the jewelry was stolen, *see* 12 O.S. 1981, § 2401, we see no relevance whatever for admitting the testimony of the neighbor. Particularly, we are offended by the State's argument at trial that the neighbor's testimony was necessary to refute appellant's defense that the jewelry was given to him. As this testimony was presented in the State's case-in-chief, the State was doing nothing but anticipating appellant's defense—here, a defense that was never presented. This is inexcusable. While the State need not give notice of such testimony if the evidence is presented on cross examination or on rebuttal, *Freeman v. State*, 681 P.2d 84, 85 (Okl.Cr.1984), it cannot use an anticipated defense as an excuse for circumventing the *Burks* requirements. *See Landtroop v. State*, 753 P.2d 1371, 1372 (Okl.Cr.1988). In addition to the lack of notice, we fail to see where the State showed that the evidence of other crimes was necessary to support its burden of proof, or that the evidence was not cumulative. *Burks*, 594 P.2d at 775.

■ But we reverse not only because of the *Burks* violations. We feel that in admitting the evidence, the trial court failed to consider that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. 12 O.S. 1981, § 2403; *see also Jones v. State*, 695 P.2d 13, 16 (Okl.Cr.1985). The evidence presented here was so inclined. It has been suggested that the proper balancing test to determine admission is to give the evidence "its maximum reasonable probative force and its minimum reasonable prej-

udicial value." 1 L. Whinery, *Guide to the Oklahoma Evidence Code* 80 (1985) (citing 1 J. Weinstein and M. Burger, *Weinstein's Evidence* § 403[03]). Even assuming this is the correct test, the evidence should not have been admitted. The maximum reasonable probative force that one could gather from this testimony was that the victim did not voluntarily give appellant her jewelry; the minimum reasonable prejudicial value was that, in addition to possessing jewelry of the victim, appellant raped her, threatened her life and ransacked her house. We cannot say from this testimony that the evidence was not a "subterfuge for showing to the jury that the defendant is a person who deserves to be punished." *Burks*, 594 P.2d at 775. See also *Littlejohn v. State*, 713 P.2d 22, 24 (Okl.Cr.1986) (Even assuming the evidence had probative value, its highly prejudicial nature would cause its exclusion under § 2403).

Therefore, appellant's judgment and sentence is REVERSED and REMANDED for proceedings consistent with this opinion.

PARKS, J., concurs.

BUSSEY, J., dissents.