2004 OK CR 6

**Emmanuel A. LITTLEJOHN, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. D–2000–1609.

Court of Criminal Appeals of Oklahoma.

Feb. 12, 2004.

**290**

James T. Rowan, Janet Chesley, Oklahoma Indigent Defense System, Norman, OK, Joel A. Porter, Attorney At Law, Oklahoma City, OK, attorneys for appellant at trial.

Pattye High, Assistant District Attorney, Jodi Casey, Assistant District Attorney, Oklahoma City, OK, attorneys for the state at trial.

Janet Chesley, Matthew D. Haire, Capital Trial Division, Oklahoma Indigent Defense System, Norman, OK, attorneys for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, David M. Brockman, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

## OPINION

STRUBHAR, Judge.

¶1 Emmanuel A. Littlejohn, Appellant, was tried by jury in the District Court of Oklahoma County, Case No. CF–92–3633, and was convicted of Robbery with a Firearm, After Former Conviction of Two or More Felonies (Count I), First Degree Malice Aforethought Murder (Count II) and Conspiracy to Commit Robbery with a Firearm, After Former Conviction of Two or More Felonies (Count III). The jury found three aggravating circumstances[1] and recommended a death sentence for Count II. The jury set punishment at three hundred (300) years imprisonment for Count I and ninety-nine (99) years imprisonment for Count III. The trial court sentenced Littlejohn accordingly.

¶2 Littlejohn appealed his Judgment and Sentence to this Court. We affirmed his convictions and sentences for Counts I and III,[2] but vacated his death sentence for Count II because of the erroneous admission of Littlejohn's uncorroborated confession to a jailhouse informant. Because we could not find the error did not influence the jury's finding of the continuing threat aggravator and because there was insufficient evidence to support the jury's finding of the great risk of death aggravator, we remanded the matter for resentencing.[3] Pursuant to 21 O.S.Supp. 2000, § 701.10a, a new jury was impaneled for the resentencing trial which was held before the Honorable Virgil C. Black on October 30–November 8, 2000. This time the jury found two aggravating circumstances[4]

---

1. The aggravators were: 1) Littlejohn had previously been convicted of felonies involving the use or threat of violence to the person; 2) Littlejohn knowingly created a great risk of death to more than one person; and 3) Littlejohn posed a continuing threat to society. *See* 21 O.S.1991, §§ 701.12(1), (2) & (7).

2. *See Littlejohn v. State*, 1998 OK CR 75, ¶ 43, 989 P.2d 901, 912.

3. *See Littlejohn*, 1998 OK CR 75, ¶¶ 33–41, 989 P.2d at 910–12.

4. The aggravators were: 1) Littlejohn was previously convicted of a felony involving the use or threat of violence to the person; and 2) the existence of a probability that Littlejohn would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S. 1991, § 701.12(1) & (7).

and recommended the death penalty. The trial court so ordered. Littlejohn now appeals from that Judgment and Sentence.[5]

¶3 Briefly stated, the facts show that on June 19, 1992, Littlejohn and Glenn Bethany robbed the Root–N–Scoot convenience store located at 532 Southeast 15th Street in Oklahoma City, Oklahoma. At the time of the robbery, Tony Hulsey, his younger brother Danny Waldrup, and store manager Kenneth Meers were working in the store. Meers was shot and killed as Littlejohn and Bethany exited the store.

¶4 In his first proposition of error, Littlejohn claims the trial court gave a constitutionally deficient response to the jury's inquiry about the ramifications of imposing a sentence of life imprisonment without the possibility of parole. During deliberations, the jury sent out a note asking, "Is it possible to change the verdict of life without parole to with parole after our verdict and without another jury verdict (by anyone)?" Defense counsel asked the trial court either to use one of its proposed instructions concerning parole ineligibility for offenders sentenced to life imprisonment without the possibility of parole [6] or to tell the jury that each of the sentencing options means what it says. After some discussion, no agreement could be reached about what would constitute a factually correct answer. As a result, the trial court, with the assent of defense counsel, opted to tell the jury that it "had all the law and evidence necessary to reach a verdict."

¶5 Littlejohn concedes this Court has upheld such responses to questions concerning the meaning of the life imprisonment without the possibility of parole sentencing option. However, Littlejohn argues the trial court's response was insufficient and unconstitutional in this particular case when considered in conjunction with the trial court's oral instructions concerning jury questions. Before the jury retired to deliberate, the trial court told the jurors it had some latitude to answer questions posed from the jury during deliberations. The judge said he would give the jurors the code—"I'll answer it if it's appropriate to answer." The judge then stated:

> If you get the code back that says, you have all the law and evidence necessary to reach a verdict, what that means is the answer to your question is in the instructions, it was in the evidence, or you're asking me something that's inappropriate for me to answer, okay. You now have the code. I'll answer what I can; if I can't, that's you know what the code means.

¶6 Littlejohn argues that the trial court's response coupled with the "code" was tantamount to telling the jury that parole was inappropriate for their consideration. Relying on *Johnson v. Gibson*, 254 F.3d 1155 (10th Cir.), *cert. denied*, 534 U.S. 1029, 122 S.Ct. 566, 151 L.Ed.2d 439 (2001) and 534 U.S. 1036, 122 S.Ct. 580, 151 L.Ed.2d 451 (2001), Littlejohn claims relief is required. Both this Court and the Tenth Circuit held it was error for the trial court in *Johnson* to respond to the jury's question concerning parole eligibility for a defendant sentenced to life imprisonment without the possibility of parole by stating it was inappropriate for the jury to consider the question because a capital sentencing jury must consider the distinctions between life, life without parole and death in reaching a sentencing decision. *Johnson*, 254 F.3d at 1165; *Johnson v. State*, 1996 OK CR 36, ¶49, 928 P.2d 309, 320, *cert. denied*, 522 U.S. 832, 118 S.Ct. 99, 139 L.Ed.2d 54 (1997). The Tenth Circuit reversed this Court's decision holding the error harmless, finding "the trial court's instruction that it was inappropriate for the jury to consider parole eligibility did not refer the

---

5. Littlejohn's Petition in Error was filed in this Court on June 5, 2001. His brief was filed January 21, 2003, and the State's brief was filed May 21, 2003. A reply brief was filed on June 10, 2003. The case was submitted to the Court on June 26, 2003. Oral argument was held on September 30, 2003.

6. The proposed instruction stated:

> You are instructed that Article 6, Section 10 of the Oklahoma Constitution, the Pardon and Parole Board shall have no authority to make recommendations regarding parole for a person sentenced to death or sentenced to life imprisonment without the possibility of parole. Further, the Governor shall not have the power to grant parole if a person has been sentenced to death or sentenced to life imprisonment without the probability (sic) of parole.

jury back to the instructions; rather, it plainly contradicted those instructions." *Johnson*, 254 F.3d at 1166. The trial court's response told the jury that parole eligibility could not be considered when plainly it could be. *Id.*

¶ 7 *Johnson* is distinguishable from the instant case. Here, the trial court followed this Court's guidelines adopted in *Cohee v. State*, 1997 OK CR 30, ¶ 2, 942 P.2d 211, 212, and told the jury it would answer the jury's questions if it could. Neither the trial court's response to the jury's question nor its supplemental oral instructions concerning how to decode its answers advised the jury it could not consider parole eligibility in determining the appropriate sentence. Because the trial court's response and supplemental instructions did not have the effect of creating the false choice dilemma condemned in *Johnson*, we find no error. *See Mollett v. Mullin*, 348 F.3d 902, 916 (10th Cir.2003)

¶ 8 Littlejohn also asks the Court to reconsider its position on providing jurors with information concerning the meaning of life imprisonment without the possibility of parole and adopt the opinion of those Court members who are in favor of providing inquiring juries a meaningful response in regard to the parole eligibility of an offender sentenced to life imprisonment without the possibility of parole. Since the enactment of

the life without the possibility of parole punishment option, a majority of this Court has adhered to the position that the three punishment options are self-explanatory. We held that instructing a capital sentencing jury on the three statutory punishment options, with their obvious distinctions, was sufficient to satisfy the due process concerns addressed in *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (plurality).[7] *See Williams v. State*, 2001 OK CR 24, ¶ 10, 31 P.3d 1046, 1050, *cert. denied*, 534 U.S. 1092, 122 S.Ct. 836, 151 L.Ed.2d 716 (2002). In addition, we have held the proper method for trial courts to utilize in disposing of jury questions inquiring about the meaning of life imprisonment without the possibility of parole was to refer the jury back to the self-explanatory instructions. *Douglas v. State*, 1997 OK CR 79, ¶¶ 102–04, 951 P.2d 651, 678, *cert. denied*, 525 U.S. 884, 119 S.Ct. 195, 142 L.Ed.2d 159 (1998). What the trial court did in this case with its response was the exact practice prescribed by this Court, and we are unwilling to hold the response was somehow insufficient, misleading or erroneous.

¶ 9 Nevertheless, the frequency with which this issue arises sparks debate anew and causes us to reexamine our present stance and consider whether future juries who ask about the meaning of life imprisonment with-

---

7. In *Simmons*, the jury was provided with two sentencing options-life imprisonment and death. Under South Carolina law, Simmons' prior convictions rendered him ineligible for parole. The trial court refused Simmons' requested instructions defining a life sentence and setting forth his parole ineligibility. On appeal, the Supreme Court found in the absence of an instruction setting forth Simmons' parole ineligibility, the jury could have reasonably believed he would be released on parole if he were not executed. The Court explained to the extent that this misunderstanding pervaded the jury's deliberations, it had the effect of creating a false choice between sentencing Simmons to death and sentencing him to a limited period of incarceration. The Supreme Court found the failure to provide the jury with accurate information regarding Simmons' parole ineligibility, combined with the state's argument that Simmons would pose a future danger if not executed, denied Simmons due process. *Simmons*, 512 U.S. at 169, 114 S.Ct. at 2196.

Unlike South Carolina, Oklahoma has three discrete punishment options for capital murder:

life imprisonment with the possibility of parole, life imprisonment without the possibility of parole and death. The jury is instructed from the outset about the parole eligibility associated with the life sentence options. We have found that the workings of Oklahoma's system take it out of the constitutional realm of *Simmons*. *See Williams v. State*, 2001 OK CR 24, ¶ 10, 31 P.3d 1046, 1050, *cert. denied*, 534 U.S. 1092, 122 S.Ct. 836, 151 L.Ed.2d 716 (2002). Recently, the Tenth Circuit specifically held that *Simmons* is applicable to Oklahoma's triple-option sentencing scheme, holding a *Simmons* due process error occurs when: "(1) the prosecution seeks the death penalty; (2) the prosecution places the defendant's 'future dangerousness ... at issue;' (3) the jury asks for clarification of the meaning of 'life imprisonment,' or a synonymous statutory term; and (4) the judge's response threatens to cause "a jury's misunderstanding so the jury will ... perceive a 'false choice' of incarceration when future dangerousness is at issue." *Mollett v. Mullin*, 348 F.3d at 914 (citations omitted).

out the possibility of parole should be given further explanation. We see case after case in which the jury is instructed on the three punishment options, and yet the jury sends out a note, asking in some form or fashion whether the offender will be parole eligible if sentenced to life imprisonment without the possibility of parole.[8] We are concerned the jury's question here illustrates a recurring misconception within Oklahoma juries regarding the effective application of a life imprisonment without the possibility of parole sentence, which in turn casts at least some doubt on our premise that the punishment options are self-explanatory. Unlike the *Simmons* situation where the jury's question stemmed from the fact it was not given any information about parole eligibility from the sentencing options provided, *i.e.*, life imprisonment or death, the situation we face in Oklahoma is that a fair number of jurors do not comprehend the plain meaning of the life imprisonment without the possibility of parole sentencing option and question whether the offender is truly parole ineligible. This is likely because "[f]or much of our country's history, parole was a mainstay of state and federal sentencing regimes, and every term (whether a term of life or a term of years) in practice was understood to be shorter than the stated term." *Simmons*, 512 U.S. at 169, 114 S.Ct. at 2197. It is only in our recent history that the federal government and many other states have rejected the possibility of parole for certain crimes, thereby displacing this longstanding practice. *Simmons*, 512 U.S. at 177–78, 114 S.Ct. at 2201 (O'Connor, J., concurring). Given these circumstances, common sense tells us that some jurors may be confused even when, as here, the jury is presented with one "traditional" life sentencing option, alongside a separate option that specifically states that parole will not be available.

¶ 10 Because of the qualitative difference of death from all other punishments, we are especially concerned with providing capital sentencing juries with accurate sentencing information so the jury is capable of a reasoned moral judgment whether death, rather than some lesser sentence, ought to be imposed. The actual duration of the defendant's prison sentence and whether release through parole will be available is indisputably relevant in making the capital sentencing decision. In *Cohee*, 1997 OK CR 30, ¶ 2, 942 P.2d at 212, this Court adopted Guidelines Governing Juries in Criminal Trials to encourage the development of informed, capable juries. We recognized that the better informed a jury is, the better it could perform its function. *Id.* In Guideline 4(D), we stated that trial courts, as Judge Black did here, may instruct the jury that it may submit questions during deliberations and that the court will attempt to answer the jury's questions as fully as the law permits. *Cohee*, 1997 OK CR 30, 942 P.2d at 215. In the Comment to Guideline 4(D), we encouraged trial courts, to the extent the law permits, to attempt to answer the jury's questions using clear and plain language. *Id.*

¶ 11 Therefore, in future cases where the jury during deliberations asks, in some form or fashion, whether an offender who is sentenced to life imprisonment without the possibility of parole is parole eligible, the trial court should either refer the jury back to the instructions, *Douglas*, 1997 OK CR 79, ¶¶ 103–04, 951 P.2d at 678, tell the jury that the punishment options are self explanatory, *see Mayes*, 1994 OK CR 44, ¶ 137, 887 P.2d at 1318, or advise the jury that the punish-

8. *See, e.g., Hawkins v. State,* 2002 OK CR 12, ¶¶ 42–47, 46 P.3d 139, 148–49; *Taylor v. State,* 2000 OK CR 6, ¶ 26, 998 P.2d 1225, 1232, *cert. denied,* 531 U.S. 1157, 121 S.Ct. 1109, 148 L.Ed.2d 978 (2001); *Powell v. State,* 2000 OK CR 5, ¶ 127, 995 P.2d 510, 536, *cert. denied,* 531 U.S. 935, 121 S.Ct. 321, 148 L.Ed.2d 258 (2000); *Fairchild v. State,* 1999 OK CR 49, ¶ 90, 998 P.2d 611, 629, *cert. denied,* 532 U.S. 1039, 121 S.Ct. 2002, 149 L.Ed.2d 1004 (2001); *Salazar v. State,* 1998 OK CR 70, ¶¶ 38–39, 973 P.2d 315, 327, *cert. denied,* 528 U.S. 895, 120 S.Ct. 226, 145 L.Ed.2d 190 (1999); *Welch v. State,* 1998 OK CR 54, ¶¶ 43–48, 968 P.2d 1231, 1245–46, *cert. denied,* 528 U.S. 829, 120 S.Ct. 83, 145 L.Ed.2d 70 (1999); *Mollett v. State,* 1997 OK CR 28, ¶¶ 40–41, 939 P.2d 1, 11, *cert. denied,* 522 U.S. 1079, 118 S.Ct. 859, 139 L.Ed.2d 758 (1998); *Johnson,* 1996 OK CR 36, ¶¶ 45–52, 928 P.2d at 319–20; *McCracken v. State,* 1994 OK CR 68, ¶¶ 47–49, 887 P.2d 323, 334, *cert. denied,* 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995); *Mayes v. State,* 1994 OK CR 44, ¶¶ 126–37, 887 P.2d 1288, 1316–18, *cert. denied,* 513 U.S. 1194, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995).

ment options are to be understood in their plain and literal sense and that the defendant will not be eligible for parole if sentenced to life imprisonment without the possibility of parole. While arguably the latter response is nothing more than another way of referring the jury back to the instructions, it does force the jury to accept the plain meaning of the sentencing options and impose the sentence it deems appropriate under the law and facts of the case. We recognize trial courts are in the best position to decide which answer is best suited to the situation as the questions posed by juries come in a myriad of forms on this issue. However, we believe the latter explanation may alleviate some obvious concerns of jurors more effectively than simply telling the jury it has all the law and evidence necessary to reach a decision.

¶ 12 In Proposition II, Littlejohn claims the admission of Bill Meers' testimony in support of the continuing threat aggravating circumstance, without proper notice, deprived him of a fair resentencing trial. The record shows the State sought to introduce through Bill Meers a statement made by Littlejohn to the victim's family as he exited the courtroom following the death verdict in his first trial. On August 30, 1999, the State filed a supplemental statement to its notice of aggravating evidence to be offered to support the Bill of Particulars. The supplemental notice provided that Delores Meers, the victim's mother, would testify that as Littlejohn exited the courtroom after the death verdict, he said "To (sic) bad, but your son is still dead!".[9] Defense counsel filed an objection to this proposed testimony on several grounds, but primarily because the notice was untimely as the discovery deadline had passed. Judge Bragg heard the matter and ruled that the statement was irrelevant and therefore inadmissible.

¶ 13 A week before trial, Judge Black, the presiding judge at Littlejohn's resentencing trial, heard a motion to adopt the prior orders entered in the case. At this hearing, the State announced its intent to call Bill Meers, the victim's brother, to testify that Littlejohn made the statement to him and

the prosecutor stated that the transcript was an accurate recitation of what Littlejohn had said. The trial court found that the circumstances surrounding the making of the statement were not sufficiently clear so it could not determine if the statement was a "threatening menacing situation or a low class taunting of the family." The prosecutor then suggested that the court hold an *in camera* hearing prior to the State calling Bill Meers to determine the exact nature and admissibility of the statement, and the trial court agreed.

¶ 14 On the fifth day of trial, the trial court held the *in camera* hearing at which Bill Meers testified that Littlejohn said to him, "The motherfucker is dead and he ain't coming back." Meers said he responded by saying, "justice." Littlejohn then said, "I killed the motherfucker, I'll kill you." Upon questioning from the court, Meers stated he thought the first remark was taunting, but he considered the second remark a threat. Defense counsel objected to the admission of Meers' testimony, claiming he had no notice of the second remark until that moment. The State argued the supplemental notice filed August 30, 1999 gave the defense adequate notice of the incident it intended to introduce. The trial court asked the prosecutor when she learned of the additional statement, and she said she learned of the additional statement after the previous motion hearing when she contacted Meers. The trial court also asked Meers if anyone from the defense team had tried to contact him, and Meers said no. The trial court then asked Meers if he had always remembered the entire content of the statement and Meers said he had never forgotten it and that he would have told anyone who asked the whole statement. The trial court ruled the entire statement would be admissible and denied defense counsel's motion for a mistrial.

■ ¶ 15 The matter was again addressed after the trial court directed the State not to call Meers on a Friday so the defense would have time to try and find the two guards who were escorting Littlejohn at the time the

---

9. The court reporter at Littlejohn's trial recorded Littlejohn's statement as, "Fuck you, punk. He's still dead, he ain't coming back. (1994Tr.VIII at 308).

alleged statement was made. Defense counsel again argued, without success, that the trial court should exclude the statement due to lack of notice and due to its extremely prejudicial nature. The trial court overruled defense counsel's objection. Because defense counsel objected to the admission of Meers' testimony, this issue has been preserved for appeal. *Black v. State*, 2001 OK CR 5, ¶ 92, 21 P.3d 1047, 1077, *cert. denied*, 534 U.S. 1004, 122 S.Ct. 483, 151 L.Ed.2d 396 (2001).

¶ 16 The rules governing this claim were set forth in *Black*, 2001 OK CR 5, ¶ 93, 21 P.3d at 1077:

Title 21 O.S.1991, § 701.10 provides that during the penalty phase of trial only such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible. This Court held in *Wilson v. State*, 1988 OK CR 111 n. 1, 756 P.2d 1240, 1245 n. 1 that § 701.10 does not require the State to give a detailed description of the evidence that will be offered in the second stage. Notice is sufficient if it allows the defendant the opportunity to present a defense or explanation for the alleged criminal conduct. *Johnson v. State*, 1982 OK CR 37, ¶ 36, 665 P.2d 815, 823. To this end the notice must contain a summary of the evidence intended to be used to support the alleged aggravating circumstance as well as a list of the witnesses the State might call.

*Id. (quoting Miller v. State*, 1998 OK CR 59, ¶ 65, 977 P.2d 1099, 1112, *cert. denied*, 528 U.S. 897, 120 S.Ct. 228, 145 L.Ed.2d 192 (1999)).

¶ 17 While the notice need not contain every detail, it must contain the essential point(s), statement(s), or fact(s) and the main element(s) of the evidence the State intends to introduce to prove the aggravating circumstances alleged so the accused can prepare and present a defense or explanation. *See Wilson*, 1988 OK CR 111, ¶ 23 n. 1, 756 P.2d at 1245 n. 1.

¶ 18 Here, the State did not provide Littlejohn with adequate notice of Meers' testimony. It is true the defense had actual notice the week prior to trial that the State wanted to call Bill Meers to testify about the taunting incident that was recorded in the record at the end of Littlejohn's first trial, despite no formal written notice being provided nor the inclusion of Meers in any witness lists. However, the defense had no notice, until the fifth day of the resentencing trial, that Meers would testify about an admission by Littlejohn that he killed Meers' brother or of a personal threat to Meers. The defense had notice of only the recorded statement, and it was the portion that was not disclosed that was relevant. Without the threat to Meers, the recorded statement likely would have been ruled inadmissible. It was the admission and threat that made the statements relevant. The prosecutor had a duty to disclose the unrecorded portion of the statement once she learned of it. As such, it cannot be said on this record that the notice was sufficient.

¶ 19 Littlejohn claims he was not only prejudiced by the lack of notice, but that the error was compounded by the prosecutor's improper bolstering of Meers' testimony. During re-direct, the prosecutor elicited from Meers that she was one of the prosecutors in Littlejohn's first trial and that she had been present in the courtroom. The prosecutor then asked, "so in terms of you never having told anyone about those statements, were you aware that I was present and heard?". Defense counsel objected, and the trial court sustained the objection and admonished the jury to disregard the question. Littlejohn contends the question insinuated that the prosecutor heard the entire statement thereby bolstering Meers' testimony when, in fact, the prosecutor claimed that she had only recently learned of the unrecorded portion of Meers' statement. He also contends the error was exacerbated by the rebuttal testimony of Judy Bush, the Oklahoma City Police Department's homicide victim liason, who claimed she heard Littlejohn's entire statement to Meers.

¶ 20 The question we must determine is whether Littlejohn was prejudiced by the lack of notice, as there can be no real debate that the threatening statement was admissible, but for the notice problem. The record shows that after the *in camera* hearing, the

trial court gave the defense some time to try and find the guards who were escorting Littlejohn when he allegedly made the statement to Meers.[10] Although the defense was unable to find those guards,[11] they did locate and call Sgt. Grimsley, who was in charge of security and courtroom guard details during Littlejohn's first trial. Grimsley explained how defendants were escorted from the courtroom following verdicts at that time. According to Grimsley, it would be highly unlikely that a defendant would be able to stop and make any kind of statement to a victim's family, and if an incident did occur, a write-up would have been made. The defense also called Littlejohn, who admitted that he made the first remark to Meers, but denied telling Meers that he had shot his brother or that he threatened to kill Meers.

¶ 21 Given that the defense was given some time to develop a defense to Meers' statements, the prejudice stemming from the lack of notice, if not eliminated, was significantly reduced. As far as Littlejohn's complaint about the rebuttal testimony of Judy Bush, he opened the door to it by taking the stand and denying the admission and threat to Meers, and he cannot now complain. With respect to the prosecutor's question insinuating that she, too, heard the remark, the trial court sustained the defense's objection to the question and admonished the jury to disregard it. We have typically found that such action is sufficient to cure the error. *McGregor v. State*, 1994 OK CR 71, ¶ 34, 885 P.2d 1366, 1383, *cert. denied*, 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995).

¶ 22 The final consideration in determining if Littlejohn was unduly prejudiced is how significant the undisclosed evidence likely was to the finding of the continuing threat aggravator. In the resentencing trial, the State offered a substantial amount of continuing threat evidence. The State presented evidence that Littlejohn had been incarcerated for all but a few months from the time he was 15–years–old until he committed this crime at the age of 20. The State intro-

duced evidence that showed Littlejohn's tendency toward violence had begun in elementary school, where he was placed in a class for the emotionally disturbed and he continued to get in trouble for his behavior. The State presented evidence that Littlejohn had been involved in robberies, assaults and a rape. In addition, the State introduced evidence of numerous infractions, some violent, while Littlejohn was in the Oklahoma County Jail awaiting his first trial, as well as incidents that occurred while Littlejohn was imprisoned in the Department of Corrections (DOC).

¶ 23 Although Littlejohn defended against the continuing threat aggravator on the theory that he had matured in prison and was no longer a threat, as evidenced by the fact that he had received no misconduct write-ups at DOC in the three years prior to his resentencing trial and the fact that he had received excellent adjustment reports, Littlejohn admitted on the stand that he had beaten up another inmate for a pack of cigarettes the year before his resentencing trial. Therefore, under the particular facts of this case, we find any error stemming from the insufficient notice of Meers' statement was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); *see also Cannon v. State*, 1998 OK CR 28, ¶¶ 45–59, 961 P.2d 838, 850–51.

¶ 24 In Proposition III, Littlejohn argues the admission of Michelle Ware's and Cecilia Harris' testimony from his first trial, without a showing that the witnesses were unavailable, violated 12 O.S.2001, § 2804(B)(1) and the Confrontation Clause of both the United States and Oklahoma Constitutions. The record shows the State introduced several witnesses' testimony by reading their testimony from the transcript of Littlejohn's first trial. On appeal, Littlejohn concedes that, for the most part, defense counsel had no objection to this method of presenting evidence. However, defense counsel did object to the introduction of Mi-

---

10. The *in camera* hearing was held on Friday, November 3, 2000. The defense was given the weekend and Monday to prepare for Meers' testimony.

11. The names of the guards could not be ascertained due to the record keeping used at that time.

chelle Ware's and Cecilia Harris' testimony via transcript. In discussing the objection to Ware's testimony, defense counsel asked if Ware was unavailable and asked what measures the prosecutor had undertaken to secure her attendance. The prosecutor argued there was no requirement that the witness be unavailable. The prosecutor then noted that because Ware had told her that Ware's mother had died, the State was opting to use the transcript. There was no discussion concerning Harris' availability. The trial court allowed the transcripts without making any express finding concerning the availability of the witnesses.

¶ 25 The State argues the prosecutor correctly relied on the controlling statute on this issue, 21 O.S.2001, § 701.10a(4). Section 701.10a(4) provides that "[a]ll exhibits and a transcript of all testimony and other evidence properly admitted in the prior trial and sentencing shall be admissible in the new sentencing proceeding." Littlejohn counters that § 701.10a(4) cannot be used to infringe on a capital defendant's constitutional right to confront adverse witnesses. He maintains that if § 701.10a(4) is construed to allow the prosecution to supplant live testimony of a witness with their prior recorded trial testimony absent a showing of unavailability and reliability, § 701.10a(4) is unconstitutional. He contends § 701.10a(4) must be construed to meet the confrontation safeguards established in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). This is an issue of first impression for this Court.

¶ 26 Utah, whose Utah Code Ann. § 76–3–207(4) is almost identical to § 701.10a(4),[12] addressed this constitutional attack in *State v. Carter*, 888 P.2d 629, 641–43 (Utah), *cert. denied*, 516 U.S. 858, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995). The *Carter* court found that the prior testimony permitted under their provision impinged on a capital defendant's right to confrontation "as the essence of the confrontation right is the opportunity to have the accusing witness in court and subject to cross-examination, so that bias and

credibility can be evaluated by the finder of fact." *Carter*, 888 P.2d at 642 (*quoting State v. Nelson*, 725 P.2d 1353, 1356 (Utah 1986)). The court also found that the section provided no safeguards to protect the confrontation values affected. *Id.* Thus, to protect a capital defendant's confrontation and due process rights, the *Carter* court incorporated into Utah's § 76–3–201 the safeguards articulated in *Ohio v. Roberts, i.e.,* a showing that the declarant is unavailable and that the statement bears an adequate "indicia of reliability." *Id.*

¶ 27 We agree with the *Carter* court's decision and hereby incorporate the *Roberts* safeguards into § 701.10a. Thus, we hold that before the prior testimony permitted under § 701.10a(4) may be admitted in a subsequent resentencing proceeding, the State must show that the declarant is unavailable and that the statement bears an adequate "indicia of reliability." *Roberts*, 448 U.S. at 65–66, 100 S.Ct. at 2539; *see also* 12 O.S.2001, § 2804(B)(1). We also agree with the procedural safeguards adopted in *Carter*. The *Carter* court held that prior testimony is admissible in oral form only and that the written transcript should not be admitted into evidence as an exhibit, nor should it be taken into the jury room during deliberation. *Carter*, 888 P.2d at 642.

¶ 28 Today's construction of § 701.10a(4) renders moot Littlejohn's constitutional challenge. We now turn to whether the trial court's admission of Ware's and Harris' prior testimony, without a finding of unavailability, deprived Littlejohn of a fair resentencing trial. Though not directly on point, we find the factors identified in *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986) instructive in our determination of whether the Confrontation Clause error here can be found harmless beyond a reasonable doubt. "These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborat-

---

12. Utah Code Ann. § 76–3–207(4) provides in relevant part:

 In cases of remand for new sentencing proceedings, all exhibits and a transcript of all

testimony and other evidence properly admitted in the prior trial and sentencing proceedings shall be admissible in the new sentencing proceedings....

ing or contradicting the testimony of the witness on material points, the extent of cross-examination permitted, and, of course, the overall strength of the prosecution's case." *Id.*

¶ 29 The record shows the entire examination of both witnesses was read to the jury. The testimony had an adequate indicia of reliability as both Ware and Harris were thoroughly cross-examined by defense counsel. In addition, the testimony was taken under oath at Littlejohn's first trial and was transcribed by a licensed court reporter, thereby providing an adequate record. The cross-examination of both Harris and Ware at Littlejohn's first trial was conducted by the same highly competent defense attorney who represented Littlejohn at his resentencing trial. Defense counsel exposed the bias of both Harris and Ware and challenged the accuracy of their perceptions and memories. In addition, their testimony was not the only evidence offered to show that Littlejohn was the triggerman. Although he did not see Appellant fire the fatal shot, Tony Hulsey, the store clerk robbed at the counter, saw Appellant with a gun as Meers approached and believed Appellant was the triggerman. Hulsey's testimony corroborated Ware's and Harris' testimony that Littlejohn shot Meers as Meers approached him with a broom. On the record before us, we find that the error was harmless beyond a reasonable doubt. *Chapman,* 386 U.S. at 22, 87 S.Ct. at 827.

¶ 30 In Proposition IV, Littlejohn challenges the resentencing court's admission of his testimony from his first trial, claiming its admission violated his right to remain silent and denied him due process and a reliable sentencing hearing. Relying on *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), Littlejohn argues it was error to admit his prior testimony because his testimony was induced by the erroneous admission of Lawrence Tingle's testimony. Littlejohn maintains he only testified in his original trial to mitigate and rebut Tingle's testimony that he had confessed to Tingle that he had hired a hitman to kill his ex-girlfriend and their baby. Because Littlejohn objected to the admission of his prior testimony on this basis, this claim has been properly preserved for review.

¶ 31 In *Harrison,* 392 U.S. at 222, 88 S.Ct. at 2010, the Supreme Court recognized the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings. "A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him." *Id.* However, where a defendant, like in *Harrison,* is compelled to testify to rebut inadmissible confessions sponsored by the State, later use of the defendant's former testimony against him is prohibited. *Id.*

¶ 32 The State cites *Oregon v. Elstad*[13] to argue that *Harrison* is limited to instances in which the confession was illegally obtained and inadmissible on Fifth Amendment grounds. Because this Court on direct appeal found that Littlejohn's confession to Tingle was inadmissible on due process grounds,[14] the State contends *Harrison* is inapposite. We are not convinced *Harrison* can be so easily limited because in both instances, the defendant is complaining that he was, more or less, forced to testify because the State used his inadmissible confession against him.

¶ 33 However, even assuming, arguendo, that Littlejohn's prior trial testimony should have been suppressed, any error stemming from its admission was harmless beyond a reasonable doubt and did not contribute to the death sentence. First, and maybe foremost, the prosecutor neither called Tingle to testify nor did she introduce Littlejohn's prior testimony that referred to

---

13. 470 U.S. 298, 316–17, 105 S.Ct. 1285, 1297, 84 L.Ed.2d 222 (1985) (noting *Harrison* applies where the prosecution violated the defendant's Fifth Amendment rights by introducing his inadmissible confession).

14. *Littlejohn,* 1998 OK CR 75, ¶¶ 34–37, 989 P.2d at 910–911.

Tingle or any statements Littlejohn made to Tingle. Second, the remainder of Littlejohn's prior testimony that was introduced was cumulative to other evidence that was admitted at the resentencing trial. The jury at resentencing heard all about Littlejohn's early childhood and family problems, his difficulties in school, his prior criminal record/activity, his behavior problems while incarcerated, the events surrounding the robbery of the Root–N–Scoot and his remorse. Finally, Littlejohn testified again at the resentencing trial where he was thoroughly cross-examined on a majority of the subjects covered during his first-trial testimony. Based on this record, we find no relief is warranted.

¶ 34 In Proposition V, Littlejohn again challenges evidence admitted at his resentencing trial. First, he complains of the admission of Gene McPherson's testimony, arguing McPherson was allowed to give an improper lay opinion concerning the ultimate issue of his future dangerousness. A review of the record shows that Littlejohn did not object to McPherson's testimony on this basis and did not specifically object to his opinion that Littlejohn was dangerous. As such, we will review only for plain error. *Washington v. State*, 1999 OK CR 22, ¶ 18, 989 P.2d 960, 969. McPherson testified that his unit investigated complaints filed by inmates and staff at the county jail. McPherson said he investigated four or five complaints involving Littlejohn for violent behavior, assaultive behavior or behavior that he considered to be dangerous. McPherson noted that Littlejohn's picture was displayed in the officer's break room, along with pictures of other inmates who had exhibited a violent or assaultive nature, to apprise other officers to use a "great deal" of caution when dealing with these inmates. McPherson also stated his opinion that he thought Littlejohn was dangerous even in a prison setting based on his encounters with him.

¶ 35 Opinion testimony by a lay witness is permissible under 12 O.S.2001, § 2701, when it is rationally based on the perception of the witness and is helpful in the determination of a fact in issue. *Washington*, 1999 OK CR 22, ¶ 19, 989 P.2d at 970.

In this case, McPherson had been involved in investigations of Littlejohn at the county jail for violent behavior. Although the specifics of any incident eluded McPherson, who had retired since Littlejohn's first trial, his perception from his past contacts with Littlejohn was that Littlejohn was dangerous even in prison. This opinion testimony was relevant to prove the continuing threat aggravating circumstance. McPherson's inability to remember specifics concerning Littlejohn was a proper subject for cross-examination to impeach and test McPherson's perception and opinion. It should also be noted that defense counsel was able to establish through cross-examination that McPherson's opinion was limited to the time frame of 1992 through 1994, when Littlejohn was housed at the county jail. Defense counsel further established that McPherson had not had contact with Littlejohn since 1994, thereby supporting Littlejohn's contention that he had changed. Based on this record, we find no plain error in the admission of McPherson's testimony.

¶ 36 Second, Littlejohn asserts that it was error to admit the first stage evidence from his 1994 jury trial into his capital resentencing trial. Littlejohn's main complaint is that the first stage evidence was not relevant to the issue being tried, *i.e.*, punishment. This same argument was recently rejected in *Fitzgerald v. State*, 2002 OK CR 31, ¶¶ 11–13, 61 P.3d 901, 905, *cert. denied*, 538 U.S. 951, 123 S.Ct. 1631, 155 L.Ed.2d 495 (2003). *Fitzgerald* is dispositive. Accordingly, this part of Littlejohn's claim fails.

¶ 37 Next, Littlejohn claims the prosecutor's questions during cross-examination concerning an allegation that Littlejohn was "bulldogging" the inmates in his area at the county jail were improper because the questions were based on hearsay ruled inadmissible by the trial court. Littlejohn argued at the resentencing trial that the prosecutor's questions were based on Sgt. Phipps' testimony from Littlejohn's first trial concerning a reported incident of Littlejohn bullying or "bulldogging" other inmates. Defense counsel reminded the trial court that it had found Phipps' testimony concerning the

incident inadmissible because it was based on hearsay statements he had received from inmates. The prosecutor, in response to defense counsel's objection, stated that after Littlejohn's first trial, there had been another complaint that he was "bulldogging." The trial court allowed the questions.

¶ 38 What evidence the prosecutor could have presented to prove her claim is not clear. While the prosecutor could not have admitted inmate statements through a guard due to the hearsay problem, there was nothing to prevent the prosecutor from either calling the inmates who complained to testify about what Littlejohn was doing to them and whether his conduct was considered "bulldogging," or, as she did in this case, asking Littlejohn himself about it since he opened the door to questions about his conduct in jail. No error occurred here as the prosecutor did not offer any inadmissible hearsay on this issue. However, even if we were to find that the questions were somehow improper, we can safely say any error stemming from these questions did not affect the outcome of the trial as it was no secret that Littlejohn had problems in the county jail with both staff and other inmates. *See Douglas*, 1997 OK CR 79, ¶ 45, 951 P.2d at 667.

¶ 39 Lastly, Littlejohn asks this Court to consider the arguments raised in Propositions II, III and IV in our evaluation of the significance of the allegedly improper admission of the evidence attacked in this claim. Because no error was found, no further analysis is required.

¶ 40 In Proposition VI, Littlejohn argues his death sentence must be vacated because he was deprived of a fair resentencing trial by the prosecutor's misconduct. Littlejohn claims the prosecutor misled the jury by misstating the law, diminished the jurors' sense of responsibility, injected the issue of appellate review into the case, invoked societal alarm, presented extremely prejudicial evidence known to be unreliable and improperly bolstered it, and improperly questioned Littlejohn during cross-examination.

¶ 41 Littlejohn first challenges the prosecutor's questions of him on cross-examination. A review of the record reveals the challenged questions were asked to assess Littlejohn's credibility and character, which he put in issue. *Rogers v. State*, 1986 OK CR 104, ¶ 19, 721 P.2d 820, 825 (stating it is permissible to cross-examine a witness to determine credibility or to undermine it); *Chase v. State*, 1975 OK CR 201, ¶ 5, 541 P.2d 867, 870 (stating when the accused takes the witness stand in his own behalf, the State may cross-examine him with the same latitude as any witness, and the scope of direct examination may be exceeded when the purpose is to test the defendant's credibility and veracity). Second, Littlejohn objects again to the introduction and improper bolstering of Bill Meers' testimony in support of the continuing threat aggravator. This was discussed at length in Proposition II and need not be discussed further here.

¶ 42 Third, Littlejohn claims the prosecutor violated the discovery code when the prosecutor cross-examined a defense expert with county jail records that were not provided to the defense. The defense called Dr. Wanda Draper to give her opinion that Littlejohn's behavior over the last several years showed he was not a continuing threat in the secure and regimented environment of the penitentiary. On cross-examination, the prosecutor asked Dr. Draper about records from the Oklahoma County Jail describing several instances of misconduct from 1994 to the present. Defense counsel objected.

¶ 43 The record shows the prosecutor asked defense counsel about the records earlier in the day on which Draper testified and was told the defense had them. When making the objection defense counsel stated he had been mistaken and that the defense did not have those records, despite writing to the county jail several times to get them. The trial court allowed the State to question Draper about the reports since the defense had opened the door with her testimony that he had changed in the penitentiary. The trial court stated that it would allow defense counsel the opportunity to review the reports prior to re-direct examination. No recess was taken between cross and re-direct, and defense counsel did not make any further record on the matter.

¶ 44 There is no duty under the Discovery Code for the State to furnish the defense with evidence it intends to use solely to cross-examine a defense witness. 22 O.S. 2001, §§ 2001–02. This case is similar to *Parker v. State*, 1996 OK CR 19, ¶ 38, 917 P.2d 980, 988, *cert. denied*, 519 U.S. 1096, 117 S.Ct. 777, 136 L.Ed.2d 721 (1997), in which this Court found the prosecutor was not required to provide pre-trial notice that the State would cross-examine defense character witnesses about a prior act of misconduct committed by the defendant. In *Parker*, we stated:

First, "the Section 701.10 notice requirement has never been extended to cover questions the State is entitled to ask during cross-examination." *Walker v. State*, 887 P.2d 301, 317 (Okl.Cr.1994). In addition, the notice requirement is also inapplicable to testimony offered on rebuttal. *Wall v. State*, 763 P.2d 103, 105 (Okl.Cr. 1988). Finally, this Court has held that the defendant is considered to be on notice that his record will be used to prove he posed a continuing threat to society. *Mann v. State*, 749 P.2d 1151, 1159 (Okl. Cr.), *cert. denied*, 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988). The continuing threat aggravator was also alleged here.

*Id.* (footnote omitted).

¶ 45 Like in *Parker*, the continuing threat aggravator was alleged. Dr. Draper's opinion specifically addressed the continuing threat aggravator. Littlejohn knew or should have known the prosecutor would use his record to test Dr. Draper's opinions. Based on this record, we find no error occurred.

 ¶ 46 Lastly, Littlejohn cites numerous instances during closing argument that he claims were improper. A review of the record shows the majority of remarks were proper comments that fall within the wide range of argument permitted during closing argument. *Matthews v. State*, 2002 OK CR 16, ¶ 38, 45 P.3d 907, 920, *cert. denied*, 537 U.S. 1074, 123 S.Ct. 665, 154 L.Ed.2d 570 (2002). Any borderline remarks did not deny Littlejohn a fair resentencing trial. *Washington*, 1999 OK CR 22, ¶ 41, 989 P.2d at 974. As such, we find no relief is required.

¶ 47 In Proposition VII, Littlejohn argues the trial court improperly excused prospective jurors Wilson and Leonard for cause. He maintains the trial court failed to fully and fairly question these two prospective jurors to ascertain whether or not they were competent to serve in his case. "This Court has consistently held the decision whether to disqualify a prospective juror for cause rests in the trial court's sound discretion whose decision will not be disturbed unless an abuse of discretion is shown." *Washington*, 1999 OK CR 22, ¶ 9, 989 P.2d at 967.

 ¶ 48 First, Littlejohn challenges the trial court's dismissal of prospective juror Wilson. The record shows Wilson told the judge that he did not feel "comfortable" in serving because his brother was being prosecuted for murder by the district attorney's office. The judge told Wilson that sitting as a juror was not easy or comfortable for anyone. The judge then asked if Wilson's brother's situation would prevent him from being fair to both sides. Rather than answering the question, Wilson volunteered that he would never be able to give the death penalty anyway. The judge inquired further about Wilson's brother's situation and asked Wilson again if his brother's situation would affect his ability to give both sides a fair trial, and Wilson said it would. The judge confirmed that Wilson was not just uncomfortable, but felt there was no way he could fairly serve. The judge dismissed Wilson and denied defense counsel's request to rehabilitate him.

 ¶ 49 Littlejohn claims the trial court erred when it refused to allow defense counsel the opportunity to rehabilitate Wilson and further explore his views on capital punishment. We have consistently found that the manner and extent of voir dire rests within the discretion of the trial court. *Williams v. State*, 2001 OK CR 9, ¶ 15, 22 P.3d 702, 710, *cert. denied*, 534 U.S. 1092, 122 S.Ct. 836, 151 L.Ed.2d 716 (2002). "When the proper questions have been asked by the trial court to determine whether prospective jurors can sit in the case, it is not error to deny defense counsel an opportunity to rehabilitate the

excused jurors." *Id.* Contrary to Littlejohn's assertion that Wilson was excused due to his views on capital punishment, the record shows that Wilson was excused because of the bias created from his brother awaiting trial for first degree murder in the same county. On this record, we find the trial judge's questions were sufficient and that no abuse of discretion has been shown.

¶ 50 Second, Littlejohn challenges the trial court's dismissal of prospective juror Leonard. Relying on 38 O.S.2001, § 28,[15] the trial court dismissed Leonard because it found she was not of sound mind. Littlejohn argues the facts used to support Leonard's removal were gained through asking Leonard improper hypothetical questions.

¶ 51 The trial court's ruling is supported by the record, and any questionable inquiry was the result of the confusing dialogue between Leonard and the prosecutor. The record reveals that when the prosecutor moved to remove Leonard for cause, she noted that Leonard was not making sense and that she was acting erratically. The prosecutor further noted that Leonard was "giggly" and kept hitting herself in the face. The trial court voiced concerns that Leonard may not be competent. The trial court then retired to chambers to conduct further questioning for fear of what Leonard might say in front of other prospective jurors. In chambers, Leonard's odd behavior and inconsistent responses continued. She attributed her problems with concentration and understanding to her lack of sleep from working the night shift at a convenience store and her medication for menopause. On the one hand, Leonard told the prosecutor that she had been experiencing problems with her thinking and her ability to recall information and attributed her problems to her menopause medication and then told the court that she only needed a good night's sleep and would be fine. The prosecutor pressed Leonard about her medication for menopause, and Leonard again admitted that the medication caused her some memory problems. Leonard indicated that she would continue to take her medication during the trial. The trial court then asked if her erratic behavior was the result of sleep deprivation or the medication or both and Leonard said it was only lack of sleep. Thereafter, more discussion was had about Leonard's ability to serve, and the trial court noted that Leonard continued to slap herself and claw at her face and answer questions that had not been asked. Leonard's behavior and admitted memory problems were a sufficient basis to remove her for cause, and the trial court did not abuse its discretion in doing so. Accordingly, this proposition is denied.

¶ 52 In Proposition VIII, Littlejohn contends that the "continuing threat" aggravating circumstance is unconstitutional on its face and as applied. Littlejohn acknowledges that this Court has consistently rejected this attack, but asks us to reconsider our position. In *Fitzgerald,* 2002 OK CR 31, ¶ 15, 61 P.3d at 905–06, this Court noted that it and the Tenth Circuit had upheld the constitutionality of this aggravating circumstance. *Id.* Littlejohn gives us no reason to revisit this issue. As such, this proposition is denied.

¶ 53 In Proposition IX, Littlejohn relies on *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), to argue the instructions in his case were unconstitutional because jurors were not instructed that aggravating circumstances must outweigh mitigating evidence beyond a reasonable doubt. This Court rejected this claim in *Torres v. State,* 2002 OK CR 35, ¶¶ 3–7, 58 P.3d 214, 215–16, *cert. denied,* 538 U.S. 928, 123 S.Ct. 1580, 155 L.Ed.2d 323 (2003). No relief is required.

¶ 54 In his final proposition of error, Littlejohn contends that, even if no individual error merits reversal, the cumulative effect of the errors in his case necessitates either resentencing or a modification of his sentence. Because the jury asked about the meaning of life without parole, Littlejohn argues this shows the jury was seriously

---

15. Section 28 provides in pertinent part: "All citizens of the United States, residing in this state, having the qualifications of electors of this state, who are of sound mind and discretion and of good moral character are competent to serve on all grand and petit juries within their counties ..."

considering a sentence less than death and that any error or combination thereof may have influenced the verdict.

¶ 55 This Court has said that in the absence of individual error, there can be no accumulation of error. *Lewis v. State,* 1998 OK CR 24, ¶ 63, 970 P.2d 1158, 1176, *cert. denied,* 528 U.S. 892, 120 S.Ct. 218, 145 L.Ed.2d 183 (1999). "However, when there have been numerous irregularities during the course of the trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial." *Id.* We have reviewed the errors earlier found to be harmless in the aggregate and further find that they did not deprive Littlejohn of a fair resentencing trial. As such, no relief is warranted.

## MANDATORY SENTENCE REVIEW

¶ 56 Pursuant to 21 O.S.2001, § 701.13(C), we must now determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and (2) whether the evidence supports the jury's finding of aggravating circumstances as enumerated in 21 O.S.2001, § 701.12. In regard to the first inquiry, we find that Littlejohn's death sentence did not result from passion, prejudice or other arbitrary factor. In regard to the second inquiry, the jury was instructed on the two aggravating circumstances alleged and found the existence of both aggravating circumstances: (1) that Littlejohn had been previously convicted of a felony involving the threat or use of violence to the person; and (2) the existence of a probability that he would commit criminal acts of violence that would constitute a continuing threat to society. We find that both aggravating circumstances were supported by sufficient evidence. Additionally, the jury was instructed on eleven (11) specific mitigating circumstances [16] and instructed to consider any other mitigating circumstances that were present. Upon reviewing the record, we find that the aggravating circumstances outweighed the mitigating circumstances and that Littlejohn's death sentence is factually substantiated and appropriate. Accordingly, the Judgment and Sentence of the trial court is **AFFIRMED.**

JOHNSON, P.J., and LILE, V.P.J. concur.

LUMPKIN, J., and CHAPEL, J. concur in result.

LUMPKIN, Judge, Concur in result.

¶ 1 I agree that Appellant's convictions and sentences should be affirmed. I write separately to address Propositions I and III.

¶ 2 In Proposition I, giving the jury any additional information as to the meaning of life without parole is at best a half truth because it does not fully inform the jury of the ability of the Governor to commute the sentence pursuant to Art. 6, § 10 of the Oklahoma Constitution. This is the problem with trying to do more than this Court has done in the past. If the jury is told the truth about all of the means by which a defendant might not spend the rest of his or her life actually behind bars, the option of a life without the possibility of parole sentence is diluted. As set forth in the uniform jury instructions, the terms "life with the possibility of parole" and "life without the possibility of parole" are clear, concise, and speak for themselves. Any attempt at this time to define these terms further would be to start down the slippery slope of half truths and undermine the system of justice. Judges and courts do not want to be placed in the

---

16. These included: 1) Littlejohn did not intend anyone to get hurt during the robbery; 2) Littlejohn was leaving the store or had left the store when Glen Bethany shot Kenneth Meers; 3) Littlejohn was born to a drug addicted mother, and this had an impact on his development; 4) Littlejohn's father was an alcoholic who never cared for him or took any responsibility raising him; 5) Littlejohn grew up in a chaotic home due to the presence of alcohol, drugs, gambling and violence; 6) Littlejohn was abandoned by his mother at the age of five, and this abandonment had a profound influence on his development; 7) Littlejohn witnessed the abuse of his mother at the hands of his father; 8) Littlejohn was deprived of necessities such as food and utilities as a young child; 9) Littlejohn was a severely emotionally disturbed student during most of his schooling; 10) Littlejohn has adjusted well to prison life since 1994 as evidenced by his excellent conduct ratings and he has only received two "write-ups" in the State Penitentiary in the last six years; and 11) Littlejohn has expressed remorse for his participation in the death of Kenneth Meers.

position of loosing credibility with jurors and citizens by being the dispensers of false information.

¶ 3 In Proposition III, the resentencing in this case was a continuation of the first trial. The reliability of the prior testimony was adequately tested at the guilt phase of trial. Otherwise, it would not have been admitted into evidence. Appellant's right of confrontation was not violated by admission of the prior testimony presented during the guilt phase of trial. Therefore, it is hard to see how admission of the prior testimony in the second portion of the same trial is a constitutional violation. It is difficult to imagine that reliability could ever be an issue for testimony presented under oath in a prior judicial proceeding when the witness was subject to cross-examination, especially by the same defendant on the same factual issues.